**STATE of Missouri,
Plaintiff-Respondent,**

v.

**John M. NEWMAN,
Defendant-Appellant.**

No. 13454.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 1, 1985.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 14, 1985.

Application to Transfer Denied
Nov. 21, 1985.

David Robards, Joplin, for the Public Defender.

John M. Newman, Jefferson City, pro se.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Presiding Judge.

A jury has found defendant John M. Newman guilty of first-degree robbery, § 569.020, RSMo 1978, and armed criminal action, § 571.015, RSMo 1978. The defendant was found to be a persistent offender as defined by § 558.016, RSMo (Supp.1983). The court assessed defendant's punishment at 25 years for the crime of robbery and 25 years for the crime of armed criminal action. The court ordered that the sentences run concurrently. Defendant appealed. After the appeal was briefed, the defendant petitioned the court to strike the Public Defender's brief and for leave to prepare and file his brief pro se. Upon the defendant's execution of a written waiver of counsel, it was ordered that his pro se brief be filed, but the Public Defender's brief was not stricken. In the exercise of discretion, we have considered both briefs on appeal.

■ The defendant questions the sufficiency of the evidence to support the judgments of conviction but only in one respect. He vigorously maintains that his criminal agency was not established. Both briefs address the weight of the evidence, particularly the credibility of witness Mike Robinson. It is a sufficient answer to this argument to say that it is the function of the jury and not of this court to resolve differences and inconsistencies between the testimony offered by the State and that offered by the defense. *State v. Eaton*, 504 S.W.2d 12, 16 (Mo.1973). The fact that a witness is impeached does not destroy the probative force of his testimony and his evidence may be regarded as substantial by the jury. *State v. Pflugradt*, 463 S.W.2d 566, 570–571[3] (Mo.App.1971). In assess-

ing the sufficiency of the evidence, this court must accept as true all evidence and inferences that tend to support the verdicts and disregard all evidence and inferences to the contrary. The question is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdicts. *State v. Brown*, 660 S.W.2d 694, 698–699 (Mo. banc 1983); *State v. Story*, 646 S.W.2d 68, 72 (Mo. banc 1983).

There is no question that during the late evening of March 3 or early morning of March 4, 1983, a robbery was perpetrated in the Pronto Store at 26th and Maiden Lane in Joplin. Chris Pitts, an employee of the Pronto store, came to work about 10:30 p.m. on March 3. Fifteen to twenty minutes later a man wearing a ski mask and carrying a long knife entered the store. He went directly to the cash register, below which money bags were often temporarily kept. Discovering that the money bags had been put elsewhere, the robber demanded to know where they were. Pitts said he didn't know. The robber ordered Pitts to "find them." Pitts went to the back of the store, where the money bags had been placed; the robber followed with the knife at Pitts' back. The robber took the money bags and left. The money bags taken contained $1,853.53.

Pitts had seen the defendant in the store earlier in the evening. He testified that the robber was basically the same height and weight as the defendant. He was able to say the robber was a Caucasian and that the sound of his voice was the same as that of the defendant. He remembered that the robber was wearing a "jogging type" jacket and a brown ski mask but he had not seen the robber's face.

To establish the identity of the robber, the State had the evidence of Mike Robinson, another employee of the store. Robinson had known the defendant for some time; they were high school acquaintances. Robinson knew the defendant's family, particularly his brother Lee Bob. The defendant had given Robinson a beating while the two were in high school—had "punched him out"—and Robinson was afraid of the

defendant. As Robinson put it, "I didn't want no trouble with him."

During the evening of March 3, before the robbery occurred, the defendant approached Robinson in the store and asked him to come outside and talk. Once outside the store, the defendant produced a bottle of whiskey and told Robinson he had stolen it from the store. The defendant then said he had seen some money bags under the cash register and tried to induce Robinson to distract Pitts while the defendant took the money bags. Robinson refused and walked away. The defendant followed Robinson to Robinson's automobile. Thereupon the defendant "lean[ed] over the window and ... told [Robinson] that he was going to go home, ... put on a stocking mask, and come back to the store and rob it." The defendant then told Robinson "... to go home and stay there, and not to say anything to anybody about him robbing the store, or he would kill [Robinson] and kill [Robinson's] wife." To emphasize his point, the defendant produced a long-bladed knife, opened it, and told Robinson that "he would kill [Robinson], kill and rape [Robinson's] wife, and he had friends, friends on the outside that could do it if he couldn't." Robinson pretended to leave, but returned to the store and advised Pitts the defendant had stolen the whiskey. He also took the money bags lying under the cash register and put them in a filing cabinet at the back of the store, advising Pitts that he had done so.

■ Subject to some limitations not material here, it is an elementary principle of evidence that out-of-court statements which tend to prove a plan, design, or intention of the declarant are admissible to prove that the plan, design or intention was carried out by the declarant. McCormick, Evidence § 295, p. 847 (3d ed. 1984); 1A J. Wigmore, Evidence § 102, p. 1666–1667 (Tillers Rev.1983). The rule is a rule of general application. It has been many times recognized and applied by the courts of this state. See, e.g., *State v. Fish*, 50 S.W.2d 1020 (Mo.1932) (rape); *State v. Craft*, 299 Mo. 332, 344–345, 253 S.W. 224,

227–228[9] (1923) (robbery); *State v. Harris*, 150 Mo. 56, 61, 51 S.W. 481, 482[2] (1899) (rape). The rationale of the rule is very simple: "The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done. A plan is not always carried out, but it is more or less likely to be carried out." 1A J. Wigmore, Evidence § 102, p. 1666. So, contrary to the defendant's argument, the proof of his criminal agency does not rest on Pitts' observation, nor on his presence and opportunity to commit the robbery. That evidence is supplemented by his own declaration of intention, plan or design made not 30 minutes before the crime was committed. The jury's finding of defendant's criminal agency is amply supported by the evidence.

■ The defendant's second assignment is that the trial court erred in failing to declare a mistrial because polygraph tests were mentioned. On three occasions, the word "polygraph" was uttered in the courtroom on the first day of the trial. No result of any polygraph test was mentioned; the only actual test referred to was administered to witness Robinson and he was directly impeached by other sources. No contemporaneous objection was made by trial counsel for the defendant. On the second day of the trial, defense counsel moved the court for a mistrial. It is a general rule that assignments of error are not for consideration on appeal unless timely presented to the trial court; an objection must be lodged at the earliest possible opportunity so the trial court may take corrective action. *State v. Helm*, 624 S.W.2d 513, 516[5–7] (Mo.App.1981); *State v. McMillin*, 581 S.W.2d 612, 616 (Mo.App. 1979); *State v. Simmons*, 500 S.W.2d 325, 328 (Mo.App.1973). Here there is not, as there was in *Helm*, any indication that defense counsel knew in advance that polygraph tests would be mentioned, nor any indication that by conscious design counsel waited to object until no action other than a mistrial would be effective. Nevertheless, the procedural result is the same and if the point is before us, it is only as a matter of plain error. On the record, the point is so

similar to the objection raised in *State v. Woods*, 639 S.W.2d 818, 820[4–6] (Mo.1982), that on the authority of that case, we reject this claim of prejudicial error.

■ The defendant's points III and IV are much the same in both briefs. In substance, defendant's point is that the trial court erred in giving Instruction No. 13, which is MAI–CR.2d 1.10 because: a) the instruction was given prematurely; and b) in the circumstances, the instruction constituted a misstatement of the law which shifted the burden of proof to the defendant. The State is mistaken in saying that no contemporaneous objection was made; counsel did object, but did not carry his objection forward in his motion for new trial. We doubt that the point is before us except as a matter of plain error, because the objection made when the instruction was given was very general. *State v. Millican*, 641 S.W.2d 144, 146[4] (Mo.App. 1982). Nevertheless, we shall, ex gratia, give the point our consideration.

■ The jury retired to deliberate at 3:26 p.m. on July 29, 1983. At 4:45, they sent the trial court a note "saying eleven guilty, one not guilty." Believing that the giving of MAI–CR.2d 1.10 was appropriate in light of *State v. Broadux*, 618 S.W.2d 649, 651–652 (Mo. banc 1981), the trial court read Instruction No. 13 to the jury; the jury returned its verdicts at 5:20 p.m. We agree that *Broadux* is controlling in the sense that the decision whether to give MAI–CR.2d 1.10 rests in the discretion of the trial court; one cannot say, as a general matter, what constitutes "extended deliberation" in a particular case and therefore the notes accompanying MAI–CR.2d 1.10 do not limit its use except to provide that it may be given when "appropriate." *State v. Broadux*, 618 S.W.2d at 651.

■ The other aspect of this point is raised for the first time on appeal—as a constitutional matter—by the blunt assertion that "Giving of the 'hammer instruction' ... denies due process of law and violates the 5th and 14th Amendments to the United States Constitution, *see, e.g.,* *U.S. v. Fioravanti*, 412 F.2d 407, 419 (CA3 1969)." *Fioravanti* is not so much an opin-

ion as it is a diatribe against the "Allen charge," which draws its name from the opinion in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The instruction is also referred to as the "hammer" instruction, as the "dynamite" charge, and in other states as the "third degree" instruction or the "shotgun" instruction. Contrary to the defendant's assertion, in *Fioravanti* the Third Circuit did not a) consider any constitutional questions raised by giving the Allen charge, nor b) reverse the case. *Fioravanti*, 412 F.2d at 419.

Judge Devitt and Professor (now Judge) Blackmar, writing in 1977, concluded:

"The '*Allen*' or 'dynamite' charge has a long history both in state and federal courts, and, with modifications, is approved in most of the [federal] circuits."

Devitt and Blackmar, Federal Jury Practice and Instructions § 5.22, p. 163 (1977). See also 27 F.R.D. 39, 102–104 (1961). In this state, the "*Allen*" charge has been criticized, but its use is not forbidden, as its presence in MAI–CR.2d as Instruction 1.10 attests. This case was not factually complicated; about all there was to decide here was which version of the facts was true—defendant's or Robinson's. MAI–CR.2d 1.10 is not subject to the bald constitutional attack made on it, even if the question had been properly preserved, and we perceive no abuse of discretion.

In a final point, defendant in his pro se brief invites the court to reexamine *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), and to hold that his conviction of first-degree robbery and armed criminal action violated the double jeopardy provisions of U.S. Const. Amend. V. We decline. We doubt that this point was properly preserved for our review, but in any event *Missouri v. Hunter* is dispositive of the double jeopardy contention as presented in this court.

There is no error in any respect briefed in this court and accordingly the judgments are in all respects affirmed.

PREWITT, C.J., and MAUS and CROW, JJ., concur.