John Michael NEWMAN, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 15283, 15451.

Missouri Court of Appeals,
Southern District,
Division One.

April 26, 1988.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
May 12, 1988.

Application to Transfer Denied
June 14, 1988.

Melinda K. Pendergraph, Columbia, for appellant in No. 15283.

John Michael Newman, pro se, in No. 15451.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

In 1983 appellant John Michael Newman was found guilty by a jury of robbery in the first degree and armed criminal action,

and sentenced as a persistent offender by the circuit court to concurrent 25–year terms of imprisonment. The judgment was affirmed on appeal. *State v. Newman,* 699 S.W.2d 29 (Mo.App.1985).

In 1986 appellant filed a motion in the circuit court under Rule 27.26, Missouri Rules of Criminal Procedure (17th ed. 1986),[1] to vacate the conviction. Following an evidentiary hearing, the circuit court, henceforth referred to as "the motion court," in an order containing findings of fact and conclusions of law, denied relief. That order was filed June 30, 1987.

Appellant, through appointed counsel, filed a timely notice of appeal. That appeal was assigned number 15283 in this court.

On August 27, 1987, appellant, pro se, filed in the motion court a "Motion To Vacate Under Supreme Court Rule 75." That motion was denied by the motion court October 6, 1987. On October 16, 1987, appellant, pro se, filed a notice of appeal "from the denial of a Rule 75 Motion." That appeal was assigned number 15451 in this court, and was consolidated with number 15283. This opinion deals first with number 15283.

In that appeal, appellant briefs one point wherein he avers the motion court erred in denying relief, in that appellant was denied his right to effective assistance of counsel at the jury trial. Appellant's point has five components, identified respectively as paragraphs "A" through "E." We shall discuss each separately. In doing so, we are mindful that our review is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Medley v. State,* 639 S.W.2d 401, 403[1] (Mo.App. 1982); *Montgomery v. State,* 631 S.W.2d 671, 672[2] (Mo.App.1982).

Paragraph "A" of appellant's point alleges that his attorney, henceforth referred to as "defense counsel," was ineffective in "failing to investigate the circumstances surrounding appellant's arrest for petty theft, a pretext to obtain information about the robbery, and illegally seized evidence of a whiskey bottle and testimony relating thereto, and failing to file a pre-trial motion to suppress such evidence, thereby allowing the improper and prejudicial evidence to be introduced at trial."

To grasp the import of this vague and conclusional averment—and others to be considered *infra*—it is essential that the reader study the segment of this court's opinion affirming appellant's conviction where the state's evidence is summarized, 699 S.W.2d at 31–32. As shown there, the evidence that appellant had stolen a bottle of whiskey from the store where the robbery later took place was adduced during the testimony of witness Robinson, a store employee. Robinson told the jury of a conversation he had with appellant outside the store a short time before the robbery. During the conversation appellant showed Robinson a bottle of whiskey and said he (appellant) had stolen it from the store. Appellant then said he had seen some money bags under the cash register, and he tried to induce Robinson to distract another store employee while appellant took the bags. When Robinson refused, appellant told Robinson he (appellant) was going to get a stocking mask, return, and rob the store. Brandishing a long-bladed knife, appellant commanded Robinson to go home and say nothing, otherwise he (appellant) would kill Robinson and rape and kill the latter's wife.

Robinson pretended to depart, but returned to the store and phoned police, reporting the whiskey theft. Robinson testified he did so "in hope that it might keep [appellant] from coming back and robbing the store."

At trial, the state presented no evidence regarding (1) appellant's arrest, (2) anything said by appellant to authorities after his arrest, or (3) any physical evidence

---

**1.** Rule 27.26 was repealed effective January 1, 1988. Page 142, Missouri Rules of Court (19th ed. 1988). The instant proceeding continues to be governed by Rule 27.26, as the sentences were pronounced prior to January 1, 1988, and appellant's motion under Rule 27.26 was pending prior to January 1, 1988. Rule 29.15(m), Missouri Rules of Criminal Procedure (19th ed. 1988).

seized incidental to appellant's arrest. Consequently, even if appellant's arrest was a pretext, his conviction was untainted thereby. Furthermore, appellant failed to demonstrate, either at trial or at the evidentiary hearing in the motion court, that his arrest was unlawful, thus the factual basis for his complaint in paragraph "A" was never established.

The motion court found that the transcript of the jury trial showed that the state did not offer in evidence any statement made by appellant or any physical evidence taken from him. Appellant maintains that this finding is erroneous, "as it ignores all the testimony adduced at trial relating to the theft of the whiskey." While appellant does not identify the testimony about which he complains, we assume he means Robinson's testimony, mentioned earlier.

■ If appellant believes defense counsel was ineffective in failing to seek suppression of that testimony, appellant is mistaken. His disclosure to Robinson that he (appellant) had stolen the whiskey was an integral part of appellant's effort to persuade Robinson to aid appellant in stealing the money bags. As observed in our opinion affirming the conviction, appellant's declaration to Robinson that he (appellant) intended to steal the bags constituted evidence that he was the perpetrator, as the presence of a design or plan to do a given act has probative value to show that the act was in fact done. 699 S.W.2d at 32. Evidence of other crimes is competent to prove the crime charged when such evidence tends to establish motive, intent, absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. *State v. Mitchell*, 491 S.W.2d 292, 295[1] (Mo. banc 1973); *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954).

■ As appellant's statements to Robinson tended to establish appellant's intent and his identity as the robber, such statements were admissible even though they showed appellant had stolen the whiskey. If evidence of a separate and distinct crime is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the accused guilty of another crime. *State v. Holbert*, 416 S.W.2d 129, 132 (Mo.1967); *State v. Sanner*, 655 S.W.2d 868, 879[17] (Mo.App.1983). Counsel for an accused has no duty to object to admissible evidence, and failure to do so does not establish ineffective assistance warranting post-conviction relief. *Parcel v. State*, 687 S.W.2d 621, 624[3] (Mo.App. 1985). Paragraph "A" of appellant's point is denied.

Paragraph "B" of appellant's point indicts defense counsel for dereliction in "failing to interview and investigate five defense witnesses." The first two are Robert Chituck and Tony Tripolli. Chituck, says appellant, admitted committing the robbery; Tripolli, according to appellant, knew that Chituck, not appellant, had committed the robbery.

The evidentiary basis for the above contention follows.

Defense counsel, testifying in the motion court, was asked about Chituck and Tripolli. Counsel said: "I remember that we had discussed that there was somebody floating around—one guy that was in Joplin and I think that might have been Tripolli or the other one—that was supposed to know who robbed it. Or somebody had made a statement to him, you know, like at a party: 'I did the robbery.' And then of course the guy that allegedly did the robbery.... I talked to one of them in jail and I don't know which one it is. And somebody out of my office may have talked to both of them.... So I know that we had some investigation towards them and for some reason—I reviewed my file—we had issued writs of habeas corpus or writs for ad testificandum to both of them, and for some reason we withdrew that.... It's just I made a decision not to bring these individuals down from the Missouri State Penitentiary.... The problem was I think, you know, and I'm guessing a little bit on my memory, what really happened, I think

I talked to the individual that heard the hearsay. And I knew I couldn't put him on because he can't stand up there and testify about what somebody else told him. And I believe the guy that supposedly did the robbery had a lawyer at that time and for some reason or another it got interceded. Now that's only from memory and that may not be correct. But there was some reason that I did not go ahead and try to bring that individual in. I knew that whichever one—and I don't know whether it's Chituck or the other guy—was the guy that heard the hearsay at a party, he had heard somebody, he said, I knew I couldn't use him to testify. And I don't know on the other guy. . . . I'm sure I made some type of decision not to use him. You're always a little careful about using people out of the penitentiary in a trial. . . . Now the guy that allegedly committed the crime, there was a reason, either I didn't talk to him or I did and he denied it, or he was represented by a lawyer and I think the lawyer may have told me to leave him alone."

Appellant, testifying in the motion court, recounted that while he was in jail prior to trial he called defense counsel "and told him this dude had come in the jail and told me this and that he ought to come and talk to him." According to appellant, defense counsel never did. Appellant further testified that *after* his trial, while he was incarcerated at Moberly, he obtained a written statement from Chituck and a written statement from Tripolli. Chituck's statement, according to appellant, stated that he (Chituck) "was the one that did the robbery and described it in detail"; Tripolli's statement, according to appellant, indicated that Chituck had told Tripolli "that he'd done the robbery." [2]

Implicit in appellant's contention regarding Chituck and Tripolli is the assumption that if defense counsel had called them as witnesses at appellant's trial, they would have testified in accordance with the written statements appellant later obtained from them while imprisoned. We find

nothing in the record on appeal establishing that they would have done so. Indeed, defense counsel's testimony in the motion court indicates otherwise, at least in regard to Chituck. It is difficult to envision an attorney representing Chituck allowing him to take the witness stand at appellant's trial and confess the robbery. *See: Battle v. State*, 745 S.W.2d 730, 732–33 (Mo.App. 1987).

The motion court found that it was defense counsel's decision that Chituck and Tripolli would not help appellant's case. The motion court said: "The Court finds that this was an exercise of reasonable judgment. The defense being relied upon was alibi and defense counsel decided it was better to rely on this than to risk putting Chituck on the stand. In the first place, Chituck's credibility was doubtful because he was a convicted felon and in the second place, if cross examination disclosed that if [sic] he was not familiar with the details of the robbery, the jury would undoubtedly concluded [sic] he was lying. The jury might have further concluded that if [appellant] produced one false witness, he would probably produce other false witnesses and this would have weakened the alibi defense."

■ In order to prevail on a claim of ineffective assistance of counsel, a prisoner must show that (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). The selection of witnesses and the introduction of evidence are questions of trial strategy and the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel. *Id.* at 858; *Franklin v. State*, 655 S.W.2d 561, 565[12] (Mo.App.1983).

■ Given (a) the lack of certainty that Chituck and Tripolli, at the time of appellant's trial, would have testified in accord-

---

**2.** Chituck's written statement and Tripolli's written statement were received in evidence in the motion court as Movant's Exhibits B and C.

They have not, however, been filed with the clerk of this court.

ance with their subsequent written statements, (b) the question whether Tripolli's testimony would have been admissible (*see: State v. Grant,* 560 S.W.2d 39, 42–43 (Mo. App.1977)), and (c) the strategy considerations discussed in the motion court's findings, we cannot brand defense counsel ineffective for failing to call Chituck and Tripolli as witnesses at appellant's trial.

■ The third witness defense counsel should have interviewed, according to appellant, was "an unidentified man who drank coffee at the Pronto Store each night before he went to work." This man, says appellant, overheard the conversation between Robinson and appellant the night of the robbery.

The absence of merit in this contention is demonstrated by the fact that all of the testimony at appellant's trial showed that only one other person was present during the conversation outside the store between Robinson and appellant. That person was Delores Landham, who, in her testimony at appellant's trial, described him as her "boyfriend" and the father of her child. Nowhere did anyone, including Ms. Landham, indicate any man overheard the conversation between Robinson and appellant, and nowhere in his evidence in the motion court did appellant supply any clue as to how the unknown coffee drinker's testimony could have aided him.

■ A prisoner seeking post-conviction relief on the ground that his attorney rendered ineffective assistance in failing to investigate or interview a witness who could have supplied exculpatory testimony is required to show, among other things, what the testimony of the witness would have been and how it would have aided him. *Simons v. State,* 719 S.W.2d 479, 480[1] (Mo.App.1986); *Ryder v. State,* 657 S.W.2d 64, 65[1] (Mo.App.1983). Appellant failed to do so with respect to the unknown coffee drinker.

■ The fourth witness—or witnesses—appellant says defense counsel should have interviewed and investigated were "the owners of a green Pinto station wagon similar to the vehicle used in the robbery."

Robinson, testifying at appellant's trial, recounted that during his conversation with appellant outside the store, he saw Ms. Landham nearby in a green Pinto. Robinson was not at the store when the robbery occurred.

Chris Pitts, a store employee who was in the store during the time Robinson and appellant were conversing outside, testified for the state at appellant's trial. Pitts recalled that after the conversation, appellant left in a "dark green or blue" Pinto. Pitts, who was on duty in the store at the time of the robbery, did not testify about any vehicle used by the culprit.

The only other person present during the robbery (besides the bandit) was Edna Stringert, another store employee. At trial, testifying as a witness for appellant, she, like Pitts, mentioned no automobile used by the culprit.

We therefore cannot fathom appellant's censure of defense counsel for failing to investigate the owners of a green Pinto station wagon "similar to the vehicle used in the robbery," as there was no evidence that *any* vehicle was used in the robbery.

Perhaps the evidence appellant has in mind was the testimony of Stephen Cox. He testified that on the night the robbery occurred, he overheard a radio dispatch that the "possible suspect vehicle" was a green Pinto. The transcript is silent as to whether authorities were seeking the vehicle because someone had seen the robber fleeing in it or because appellant had been seen with such a vehicle during his conversation with Robinson prior to the robbery.

In any event, Cox testified he drove past the Springview Garden Apartments—other evidence showed Ms. Landham lived in one of them, and she testified appellant was there with her at the time of the robbery—and saw a light green Pinto station wagon "sitting beside the apartment complex." Cox noticed a person standing by the Pinto and a second person in it behind the steering wheel. Cox observed one of the persons (his testimony is unclear as to which) walk toward the apartments carrying a

small bag "like one of the bags the kids carry to school."

Appellant's evidence at trial showed that his Pinto was not a station wagon, just "a normal Pinto."

Testifying in the motion court, appellant said he told defense counsel there was a green Pinto "that parked on the street in front of my apartment, or a little down from my apartment, that belonged to a blue house that was catty-cornered across from my apartment, right straight across the street." Appellant said he asked defense counsel "to check that out."

Defense counsel, testifying in the motion court, said he did not recall being asked by appellant to subpoena "somebody who lived down the street who had a green Pinto station wagon."

The motion court found: "According to the evidence, [appellant's] vehicle was a dark green Pinto hatchback. The State called Steven Cox who testified that he saw an unidentified man get out of a green Pinto near the girlfriend's apartment shortly after the robbery. On cross examination, [appellant's] counsel brought out that the vehicle Cox saw was a light green Pinto station wagon. Thus it appears that [appellant's] counsel had investigated the matter and was well prepared for the State's evidence. This ground is denied."

We add that nowhere in appellant's evidence in the motion court did he furnish any hint as to what the testimony of the owner of the Pinto station wagon would have been or how it would have helped him. In view of Cox's testimony that the person from the Pinto went *toward* the Springview Garden Apartments, it is difficult to imagine how the testimony of a Pinto station wagon owner who lived *across the street* from the apartments could have benefited appellant.

The final witness appellant says defense counsel should have interviewed and investigated was a Dr. Saylor. In his brief, appellant insists Saylor "had personal knowledge of an injury to appellant's wrist which would have made it physically impossible for appellant to carry bags of money

out of the Pronto store during the robbery."

In the motion court, appellant presented documentary evidence that when he was placed in jail some three weeks after the robbery, he complained of "pulled leaders in left wrist."

Testifying in the motion court, appellant recounted that he was "in a car wreck" before being jailed, and sustained a broken wrist. According to appellant, Dr. Saylor, a chiropractor in Carl Junction, examined him and was aware of the injury. Appellant added he could not bend the wrist or support any weight on it. Appellant testified he told this to defense counsel, but counsel never contacted Saylor.

Defense counsel, testifying in the motion court, did not recall any discussion with appellant about Saylor, nor did counsel remember appellant saying he had a broken wrist at the time of the robbery. Asked whether it was possible that appellant could have requested him to subpoena Saylor, defense counsel answered: "I don't really think so, because usually when a client, if he asked me to subpoena somebody, or, you know, I'll have it written down in my notes someplace, I will subpoena them unless we make a conscious decision not to subpoena them. And I just simply don't remember anything about the doctor."

The motion court found: "At the evidentiary hearing, [appellant] introduced in evidence ... his admission sheet to the county jail which stated that he had pulled leaders in his left wrist two months earlier. It is [appellant's] contention that such evidence would have led the jury to believe that he was physically unable to have committed the robbery. Defense counsel did call [appellant's] girlfriend ... who stated that [appellant] had been in a car wreck and his wrist was scratched real bad and that it gave him trouble if he lifted something. However, she testified that [appellant] was driving his car and engaging in other activities. Defense counsel's decision that the chiropractor would have been of no value at the trial was an exercise of reasonable judgment and does not show that ... coun-

sel was ineffective. This ground is denied."

It is obvious that the above finding does not resolve the issue raised by appellant's testimony and defense counsel's testimony. Appellant, as we have seen, maintains he told defense counsel about the broken wrist and Saylor. Defense counsel denied any discussion with appellant about a broken wrist or Saylor, thus defense counsel's failure to call Saylor as a witness at trial could not have been a strategic decision. If one believes defense counsel, appellant never mentioned the broken wrist or Saylor, thus there was no tactical decision for counsel to make. If one believes appellant, defense counsel knew of the broken wrist and Saylor, and failed to find out whether Saylor could supply favorable testimony.

In these circumstances, we have concluded that the motion court's denial of relief must be reversed so far as the issue regarding Saylor is concerned, and that the cause must be remanded to the motion court for a finding resolving the Saylor issue only. The finding is to be made on the evidence already presented, not on any further evidence. If the motion court finds that appellant failed to inform defense counsel about the alleged broken wrist and Saylor, the motion court shall deny relief. If the motion court finds that appellant did tell defense counsel of the alleged broken wrist and Saylor, the motion court shall determine whether defense counsel's failure to contact Saylor amounted to ineffective assistance.

As all other issues raised by appeal 15283 have been litigated in, and adjudicated by, the motion court, we shall address those not yet discussed, thereby leaving only the Saylor issue unresolved.

■ Paragraph "C" of appellant's point avers that defense counsel rendered ineffective assistance in failing to request a mistrial, make a record, or otherwise take any curative action upon learning that witness Stringert was being threatened by her employer and by a detective that she would lose her job if she testified truthfully about the robbery.

Stringert, it will be recalled, was one of the two store employees present when the robbery occurred. At appellant's trial, just before Stringert testified, defense counsel reported to the judge that counsel's partner, who was assisting in the defense, had observed Stringert's boss and the prosecuting attorney's investigator "putting pressure on her to change her story in reference to what color the eyes of the robber was."

The judge asked defense counsel's partner whether he wanted the judge to excuse the jury and hold a hearing on the matter. The partner replied that the defense should go ahead and call Stringert as a witness, and "if she doesn't feel the pressure and continues to maintain what she has maintained all along, then we don't need anything else." He added, "If she does change from her deposition and statement, I think we should have a hearing as to why she did."

The trial proceeded and Stringert testified that the robber's eyes "looked like they were brown to me." She added that in her deposition, she had said: "I think they were brown eyes."

Ms. Landham, the next witness, was asked by defense counsel what color eyes appellant had. Ms. Landham replied: "Depends on what color he is wearing. Hazel, they are blue and green, when he wears blue, they are blue; when he wears a green shirt, they are green, just depends."

Defense counsel, testifying in the motion court, was asked why he did not request a mistrial. He replied: "The reason we didn't request a mistrial was because we finally got her in and she testified his eyes were blue. I mean brown.... That was our theory of defense. The reason I didn't ask for a mistrial was because we actually got her to testify even though she had been threatened.... since she went ahead and testified and did say that—because that's the only reason we were calling her was to say that [the robber's] eyes were in fact brown."

The motion court found: "This matter was raised during the trial ... and the Court offered to hold a hearing out of the

presence of the jury to determine if the witness had been threatened or pressured. Defense counsel declined to request such a hearing, stating that they did not believe the witness would change her testimony and in fact when she testified her testimony was not changed. Under these circumstances, it is obvious that the Court would not have declared a mistrial had it been requested and counsel was not ineffective in failing to request a mistrial. This ground is denied."

*Sanders*, 738 S.W.2d 856, teaches that a prisoner seeking post-conviction relief on the ground of ineffective assistance of counsel must satisfy both the performance prong and the prejudice prong of the test articulated there. *Id.* at 857. If the prisoner fails to satisfy one prong, the court need not consider the other. *Id.*

In the instant case, witness Stringert, despite the intimidation, testified as defense counsel expected. There was no showing that her testimony was affected in any way by the conduct of her boss or the investigator. Appellant has therefore failed to demonstrate he was prejudiced by defense counsel's failure to request a mistrial or take other action regarding the Stringert incident. Paragraph "C" of appellant's point is denied.

▆ Paragraph "D" of appellant's point maintains that defense counsel was ineffective in "allowing Gay Garrison, niece of the alleged victim, David Garrison, owner of the Pronto store, to remain on the jury, even though she may have tended to give more weight to her uncle's testimony."

During voir dire, the prosecutor informed the venire that the owner or president of the corporation that owned the store where the robbery occurred was Dave Garrison. The prosecutor then asked whether anyone knew Mr. Garrison. Venire member Gay Garrison replied: "He's kind of related. I don't know really how. I think he's like my dad's cousin, so I know who he is. I don't know, we are not real close, I know."

Then, this:

"[Prosecutor]: You just know the man's name?

[Ms. Garrison]: No, I know him on sight. He would probably know me if I saw him.

[Prosecutor]: Does he visit in your home?

[Ms. Garrison]: No.

[Prosecutor]: You don't visit in his home?

[Ms. Garrison]: No.

[Prosecutor]: Would the fact that he's a right handed relative, or left handed relative, that you know the man to see him, would that cause you to want to find more in his favor or against him, or one way or the other, if you were to sit as a juror in this case?

[Ms. Garrison]: No, I don't think so.

[Prosecutor]: You're not worried about going home and having somebody say, well, you found against Uncle Dave, or—?

[Ms. Garrison]: That wouldn't be a problem."

Defense counsel did not ask that Ms. Garrison be stricken for cause and, as neither side used a peremptory challenge to remove her, she served on the jury.

Defense counsel, testifying in the motion court, said he went over the jury list with appellant at the time the "strikes" were made. Defense counsel did not recall appellant bringing up anything about "a relative of the victim."

Appellant, testifying in the motion court, said he told defense counsel he (appellant) did not want Ms. Garrison on the jury.

In its findings, the motion court, after noting the voir dire quoted above, stated: "Defense counsel had information sheets containing background information on each juror, as well as the information produced during voir dire and from all this, he determined that Gay Garrison would be a suitable juror. [Defense counsel] testified at the evidentiary hearing that [appellant] participated in the jury selection process and he thought sure [appellant] had agreed to this juror. This ground is denied."

The motion court had the right and duty to pass upon the credibility of the witness-

es, *State v. Shields,* 441 S.W.2d 719, 719[2] (Mo.1969), and was not required to believe appellant's testimony, *State v. Hurtt,* 509 S.W.2d 14, 16[5] (Mo.1974). It is manifest from the motion court's findings that the court accepted the testimony of defense counsel and rejected the testimony of appellant on the Gay Garrison issue.

Appellant, in support of his contention that defense counsel was derelict in failing to strike Ms. Garrison, directs our attention to § 546.120, RSMo 1978, which provides:

"Where any indictment or information alleges an offense against the person or property of another, neither the injured party nor any person of kin to him shall be a competent juror on the trial...."

In *State v. Coleman,* 725 S.W.2d 113 (Mo.App.1987), the court considered § 546.120 and reached this conclusion: "[W]e find the statute to be prophylactic and, thus, a violation of it, without more, would not compel the inference that actual prejudice ... occurred." *Id.* at 114–15[4].

We find no indication that appellant was prejudiced by Ms. Garrison's presence on the jury. Her responses during voir dire demonstrated she was only slightly acquainted with Dave Garrison, and she was not sure exactly how they were related. She firmly stated there would be no problem if she rendered a verdict adverse to him.

Furthermore, while Dave Garrison testified as a state witness, his testimony was confined to such matters as ownership of the store, the amount of cash taken, and company policy regarding the handling of money. Appellant, at the jury trial, did not dispute any of those items; the sole issue was whether appellant was the culprit. Dave Garrison gave no testimony on that issue. Paragraph "D" of appellant's point is denied.

■ Paragraph "E" of appellant's point asseverates that defense counsel was ineffective in "failing to timely object to the improper testimony regarding a polygraph examination, which created the inference that state witness Robinson was credible."

In our opinion affirming appellant's conviction, 699 S.W.2d at 32[4–6], we rejected appellant's contention that the trial court erred in denying defense counsel's motion for mistrial because witnesses mentioned polygraph examinations on three occasions. We held that inasmuch as all three instances occurred on the first day of trial and the motion for mistrial was not made until the second day, the issue was not preserved and was before us for plain error review only. We rejected the claim of prejudicial error. *Id.*

Now, of course, the issue is whether appellant is entitled to post-conviction relief because defense counsel failed to register contemporaneous objections to the three polygraph references.

The first polygraph reference was during the direct examination of Robinson. When he testified that appellant asked him to distract the clerk while appellant took the money bags, the prosecutor asked Robinson about his response. Robinson answered, "I said no, I had to take a polygraph test for anything that come up missing." Robinson explained that was "store policy," and that "[e]verybody has to take one."

The second polygraph reference was during defense counsel's cross-examination of Robinson, who, at time of trial, was no longer employed by Pronto Stores. That incident:

"Q. Did Pronto ask you to leave?

A. No, sir.

Q. Isn't it true that Dave Garrison, the owner of Pronto, took you down to the police station?

A. You might say he took me to Springfield for a polygraph test, then he took me to the police station."

The third polygraph reference was during the prosecutor's questioning of Dave Garrison. The prosecutor asked whether Garrison had a system for checking his employees for theft. Garrison answered: "We keep our inventories in the stores on a retail basis, and we have periodic—usually about once a month—actual physical audits. That's one method, we determine that our inventory levels in the stores are

where they should be. We also periodically give polygraph tests to all employees. Normally about twice a year unless there is a problem arises in a particular store."

It is clear that no prejudice could have resulted from the first incident, as Robinson mentioned the polygraph for the sole purpose of explaining to appellant why he (Robinson) was unwilling to assist appellant in stealing the money bags. There was, in the first incident, no reference to the result of any polygraph examination that would have bolstered the credibility of Robinson.

It is likewise clear that no prejudice could have resulted from the third incident. Again, there was no indication that any polygraph examination had been given to anyone in connection with the robbery in question, and no mention of the result of any examination.

The only polygraph reference which could have arguably prejudiced appellant was the second incident, where Robinson disclosed that Dave Garrison had taken him to Springfield for a polygraph test, inferably in regard to the robbery in question. There was, however, no evidence that (a) the examination was in fact administered, (b) whether the examination, if given, produced a conclusive result, or (c) if so, what the result was. In such circumstances, we cannot infer that the jury was influenced adversely to appellant by the second incident.

The motion court ruled that defense counsel's failure to object to the polygraph references did not warrant post-conviction relief, as the polygraph references came in inadvertently and briefly and appeared to make little impression on the jury. That finding is not clearly erroneous. Paragraph "E" of appellant's point is denied.

■ We turn now to appeal 15451. As explained at the outset of this opinion, 58 days after the motion court filed its order denying relief appellant filed a "Motion To Vacate Under Supreme Court Rule 75." In that motion, appellant asked the motion court to vacate its judgment and hear additional evidence. Appellant's motion averred there were witnesses he had want-

ed to present at the evidentiary hearing, and that the attorney who represented him at that proceeding had failed to subpoena them. The motion further alleged that said attorney rendered ineffective assistance in sundry other respects.

Rule 75.01, Missouri Rules of Civil Procedure (18th ed. 1987), provides:

"The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time. Not later than thirty days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and every order granting a new trial shall specify the grounds therefor. After the filing of notice of appeal and before the filing of the record on appeal in the appellate court, the trial court, after the expiration of such thirty-day period, may still vacate, amend or modify its judgment upon stipulation of the parties accompanied by a withdrawal of the appeal...."

Appellant, obviously aware that (a) his "Rule 75" motion had been filed after expiration of the 30–day period following rendition of the judgment, and (b) his appointed attorney had already filed a notice of appeal from that judgment (appeal 15283), pointed out to the motion court that under Rule 75.01 it could still vacate its judgment upon stipulation of the parties accompanied by a withdrawal of the appeal.

On October 6, 1987, the motion court, noting that no such stipulation had been signed by the prosecuting attorney, denied appellant's "Rule 75" motion.

Appellant, as we comprehend his pro se briefs in appeal 15451, maintains the motion court erred in refusing to vacate its judgment and refusing to receive further evidence. The contention is without merit. As appellant's "Rule 75" motion was filed more than 30 days after entry of the motion court's judgment, the motion court,

absent the stipulation provided for in Rule 75.01, lacked jurisdiction to reopen such judgment. *Sims v. State,* 546 S.W.2d 505, 507[2] (Mo.App.1976). The motion court was consequently correct in denying appellant's "Rule 75" motion.

The motion court's judgment of June 30, 1987, denying appellant's motion under Rule 27.26 is affirmed in all respects except as to the Saylor issue, heretofore discussed. Said judgment is reversed as to that issue only; the cause is remanded to the motion court solely for a finding on the Saylor issue framed *supra,* and entry of such judgment granting or denying post-conviction relief as shall be appropriate after such finding is made.

GREENE, P.J., and HOLSTEIN, J., concur.