STATE of Missouri, Respondent,

v.

**Randy CLEVELAND, Appellant.**

**No. 62280.**

Supreme Court of Missouri,
Division No. 2.

Feb. 9, 1982.

Motion for Rehearing and for Transfer to Court En Banc Denied March 9, 1982.

Thomas L. Sodergren, Sp. Asst. Public Defender, 19th Judicial Circuit, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Upon retrial after the reversal of a previous conviction, see *State v. Cleveland*, 583 S.W.2d 263 (Mo.App.1979), a jury convicted Randel Ray Cleveland of first degree murder. He was sentenced in accordance with the jury verdict to life imprisonment, and he has now appealed.

According to the State's evidence and theory of the case, appellant was the driver of the "escape car" used in the June 10, 1977 robbery of a liquor store in Jefferson City during the course of which Lawrence Micke, proprietor of the store, was shot and killed.

By his first point appellant asserts that the trial court erred in admitting into evidence a statement allegedly made by him to an investigator which implicated him in "the attempted robbery and shooting" because, as he contends, "any such statement was not made voluntarily, knowingly, and intelligently, but was the result of mental duress and psychological coercion, and was obtained after [he] had asked for and [had] been refused an attorney."

Appellant has failed to incorporate into the record on this appeal the testimony adduced in support of his motion to suppress. We note that during a discussion between the court and counsel concerning the admissibility of evidence, the court commented: "If I remember this was all gone into on the Motion to Suppress * * *." It is reasonably clear that a hearing on the motion to suppress was in fact held.

■ The proper and well established procedure when there is a challenge to the admissibility of a statement by a defendant based on alleged involuntariness, is to conduct a hearing out of the presence of the jury on that issue. If the court concludes from that evidence that the statement was free from improper inducement and that it was voluntarily given the statement is admitted into evidence. *State v. Hunter*, 456 S.W.2d 314 (Mo.1970). The jury then determines the weight to be given to the statement.

■ "The ultimate responsibility for the preparation and filing of a transcript on appeal * * * is upon appellant under Rule 81.12(a). Having the burden of demonstrating error it is his obligation to prepare and file a transcript which incorporates the proceedings showing that the trial court erred. That obligation is not discharged by the simple expedient of ordering the official court reporter to prepare a transcript and then filing whatever is prepared. If the transcript prepared is defective or omits material matters it is appellant's duty to take steps to supply the omission or cure the defect." *Jackson v. State*, 514 S.W.2d 532, 533 (Mo.1974). Without the record we cannot determine what evidence was before the trial court at the hearing on the motion to suppress. In this situation it is clear that appellant's first point is not preserved for review, and is not reviewable on this appeal. *State v. Gordon*, 527 S.W.2d 6 (Mo.App.1975); *State v. McClain*, 602 S.W.2d 458 (Mo.App.1980).

Appellant does not request that we evoke Rule 30.20 pertaining to plain error. Instead, based on the evidence introduced before the jury at trial, he asserts that the statements made by him were not voluntary and should have been excluded. Because of the severity of the sentence we review the case to the extent permissive on the record before us. We note here that nowhere in his brief does appellant identify the precise statements to which he has reference. He did not testify, but the only statements made by him which were admitted in evidence were testified to by an investigator.

A statement of the facts and circumstances will be helpful, and in doing so we set forth the facts as a jury reasonably could have found them from the evidence, and as the judge could reasonably have found them in determining the voluntariness of the statements, and not the detailed testimony from which such findings could have been made.

About 11:00 o'clock in the evening of June 10, 1977, Leroy Shockley entered the Warehouse Liquor Store at 1706 Missouri Boulevard, Jefferson City, Missouri. After several customers left the store, Shockley drew a pistol and shoved two remaining customers against the counter and announced "this [is] a holdup," and that he would blow their heads off if they did not do what they were told. Outside the liquor store about 70 feet away was a blue Ford Torino with one man inside and with the motor running. Shockley took money from the cash register and various items from the customers. When he reached over the counter Lawrence Micke broke a bottle of liquor over his forehead inflicting a severe wound. Shockley then fired four shots from his pistol, one of which caused the death of Micke. Shockley fled outside the store where he pointed his pistol at two men who had observed the presence of the blue Torino and told them to "stay down." He pulled the trigger several times but all the shells in the weapon had been expended. He asked the two men if they had seen the person who had hit him. The blue Torino then drove up "screeching and jam-

ming on its brakes," and Shockley got into the vehicle and it drove off at a high rate of speed. One of these two men testified, he could not positively identify appellant as the operator of the blue Torino, but he gave a general description of the driver not inconsistent with a description of appellant.

About 4:00 o'clock the next morning a police officer observed appellant in a blue Ford Torino near the Capital View Trailer Court. Appellant attempted to flee when he was apprehended. He first gave his name as Burkette and produced an identity card bearing the photograph of some other person. He then stated that his name was Gary Boyles but at the police station he gave his name as Charles Boyles. A search of the Torino revealed blood stains on the right front door and the dashboard, and a pair of sunglasses resembling those worn by the robber.

The Torino was registered in the name of Maria Jean Goforth who lived in a mobile home at the Capital View Trailer Court. She gave the police permission to search her trailer, and the police found Leroy Shockley hiding under a bed. He had a large wound on his forehead. He admitted the robbery but claimed the driver of the getaway car was a person named Danny. A pistol, a bloodstained shirt, and another pair of sunglasses were found in the trailer. Later that morning Shockley again confessed to the robbery, but he refused to name the man who drove the getaway car. He admitted, however, that the driver had escaped with him from a Wisconsin prison.

About twelve hours after his arrest appellant was interviewed by an investigator for the prosecuting attorney who had previously taken a statement from Shockley. Appellant was advised of his *Miranda* rights, told of the charges which might be brought against him, and he was shown the confession made by Shockley. He replied that he would not say anything to anyone until he had a chance to talk to Maria Jean Goforth. She was summoned and she spoke to appellant alone for about twenty minutes, after which appellant was again ad-

vised of his rights. He then signed a waiver of rights and gave a written confession to a different and unrelated crime. Appellant also made an oral statement concerning the robbery of the Warehouse Liquor Store in which he said, "just between you [the investigator] and me if I could give my life for that man's life at the liquor store, * * * I would give [it] * * *." He then added, referring to Shockley, that when he "came out [of the liquor store] to the car" he, appellant, "didn't have any idea, didn't know that anyone would be shot out there." In further reference to Shockley, he also stated: "I didn't see the cut on his head, it was dark, and when we drove away I saw the blood on his face."

■ Appellant's attack on the voluntariness of his statements is that (1) he asked for and was refused counsel before questioning and was questioned after invoking his right to remain silent; and (2) his statement was coerced by a promise that Maria Jean Goforth would not be prosecuted. It is apparent that at the pre-trial hearing on the issue of voluntariness, and at the trial, the court found the statements to have been voluntarily made. The issue on this appeal is whether there is adequate evidence to support the trial court's findings. *State v. Olinghouse*, 605 S.W.2d 58 (Mo. banc 1980); *State v. Higgins*, 592 S.W.2d 151, 158 (Mo. banc 1979).

The only testimony to the effect that appellant requested an attorney was that of Maria Jean Goforth, and it is a mild statement to say that she was not one to instill confidence in her credibility. On the other hand, the investigator testified that no such request was made, and of more importance, after being again advised of his rights appellant signed a waiver of rights and made a written confession, although to an unrelated crime. He did state that he did not want to talk to anyone until he spoke to Maria Jean Goforth, but that was his only condition and it was met. The question before the trial court at the conclusion of the hearing on the motion to suppress and again during the trial on objection to the testimony of the oral statements was

whether the statements were voluntarily given and, therefore, admissible in evidence. The question on this appeal is whether the evidence was sufficient to sustain the trial court's finding that the statements were voluntarily given. *United States v. Entrekin*, 450 F.2d 1102 (8th Cir. 1971); *State v. Alewine*, 474 S.W.2d 848, 852 (Mo.1971); *State v. Flowers*, 592 S.W.2d 167 (Mo. banc 1979); *State v. Hughes*, 594 S.W.2d 630 (Mo.App.1980). The above statement clearly demonstrates the sufficiency of the evidence to sustain the trial court's findings.

We find nothing to justify a conclusion that appellant's statements were coerced by a promise that Maria Jean Goforth would not be prosecuted. We find no such promise in the record. After appellant conferred with Maria Jean Goforth, he asked if she was going to be charged with a crime. He was told by the investigator that he "didn't know," and that it "depended upon the evidence against her, and the investigation wasn't complete, and it was up to the prosecuting attorney." Appellant does not set out what he contends constituted a promise, and no possible reasonable interpretation of the answer made to appellant can constitute a promise.

We note that in his brief to this Court appellant "concedes that probably none of the foregoing factors (concerning voluntariness) taken individually would warrant a finding that his alleged confession was involuntary and inadmissible," but he asserts that if "taken together and evaluated in the light of the totality of the circumstances" this Court should find the statement to have been made involuntarily. We agree with the first assertion but not with the second.

■ Appellant's second and remaining point is that "the verdict was against the weight of the evidence" because (1) the State failed to make a submissible case that he "knowingly aided or encouraged" Shockley in the commission of the crime, and (2) the facts and circumstances are not consistent with each other and the guilt of appellant because they showed only a previous association between appellant and Shockley.

This court does not review the weight of the evidence. *State v. Amerson*, 518 S.W.2d 29, 31 (Mo.1975). Therefore, our review will be directed to the issue of whether the evidence and the reasonable inferences to be drawn therefrom, *State v. Ludwig*, 609 S.W.2d 417 (Mo.1980), would permit a jury to find as a fact that appellant was the driver of the getaway car and thereby knowingly participated in the robbery of the Warehouse Liquor Store. Viewed in the light most favorable to the verdict, the evidence on this issue may be summarized as follows: Appellant and Shockley lived with Maria Jean Goforth and were permitted to drive her blue Ford Torino. The robbery was committed by Shockley and the getaway car was a blue Ford Torino. The description of the driver, while not complete, was not inconsistent with that of appellant. A short time after the robbery appellant was driving Goforth's Torino in the neighborhood of the Goforth trailer home. At that time Shockley had returned in the Torino to the trailer home and was hiding under the bed. When arrested appellant attempted to flee and then gave a false name. In addition, and of most importance, appellant stated to the investigator in reference to the robbery at the Warehouse Liquor Store that he did not know that anyone would be shot, and also that when Shockley came out of the liquor store and went "to the car," and "when we drove away," he, appellant, did not see the cut on Shockley's head because it was dark, but that he did see the blood on his face. This admission placed appellant in the Ford Torino and that he was the driver at the time of the robbery, and is consistent with all the other facts and circumstances.

The above constituted direct and convincing evidence that appellant was the operator of the getaway car. We find no merit to appellant's contention that this constituted impermissible "inference stacking." See *State v. Brown*, 542 S.W.2d 789, 792 (Mo. App.1976); *State v. Alexander*, 581 S.W.2d 389, 390 (Mo.App.1979).

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

WELLIVER, P. J., and HIGGINS and SEILER, JJ., concur.