STATE of Missouri, Respondent,

v.

Sherdel DAVIS, Appellant.

No. 59282.

Missouri Court of Appeals,
Eastern District,
Division One.

April 14, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 12, 1992.

Application to Transfer Denied
June 30, 1992.

---

Emily N. Blood, St. Louis, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Sherdel Davis, appeals his conviction of assault in the first degree, RSMo § 565.050, in the Circuit Court of the City of St. Louis, for which he was sentenced, as a prior and persistent offender, to five years' imprisonment. We affirm.

Appellant was charged by information with assault in the first degree on August 17, 1989. It appears from the testimony adduced at trial that the victim, Larry Day, drove his motorcycle to the Amoco Service Station located at 1100 Salisbury at about 8:00 p.m. on July 15, 1989. He removed his helmet, set it on a gasoline pump and went to the booth to purchase gas. Appellant and another man, Emmett Rhoden, appeared at the pump and removed victim's

helmet. When the victim was told of this, he ran outside to find Rhoden holding his helmet. A racial incident and fight ensued between the black victim, Day, and the two white men, Davis and Rhoden. At this point, the testimony becomes very confused and, in some cases, contradictory. However, several witnesses agree that appellant struck victim in the head with a baseball bat and struck him again on the arm as he was trying to get up. Other witnesses agree that appellant never hit the victim with a baseball bat himself, but that he had encouraged Rhoden to hit the victim. Day sustained a fractured elbow and a dislocated collar bone, and required twelve stitches on his forehead and four on his elbow as a result of injuries sustained in the attack.

Some time during or shortly after the fight, a van driven by three other black men drove into the station in an attempt to rescue the victim. Both appellant and Rhoden pounded the van with baseball bats, damaging the body and breaking out the windows. Appellant and Rhoden then got into a car and drove away. One of the witnesses to the attack called the police, and they arrived shortly after appellant and Rhoden left. Witnesses gave the license plate of the attackers' car to the police and the police went to the owner's (appellant's) residence, but neither appellant nor the car were there.

At about 9:00 p.m., appellant and Rhoden arrived at Stanley Bryant's home. Bryant told police later that Rhoden stated he was excited about having been in a fight. Later that evening, police returned to appellant's home, found appellant and arrested him. Two baseball bats were found on the floor of appellant's car.

The case went to trial on August 7, 1990. The jury returned its verdict on August 9, 1990, finding appellant guilty as charged. After finding appellant to be a prior and persistent offender, the court sentenced ap-

pellant to five years' imprisonment. This appeal ensued.

Appellant's first point on appeal is a claim under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), that the State exercised its six peremptory strikes in a racially discriminatory manner, improperly eliminating five white venirepersons from the panel, leaving only two whites on the jury.[1] In addition, appellant argues, the reasons offered by the State for the strikes were pretextual, and the State failed to strike similarly situated black venirepersons. Appellant alleges the trial court erred by denying his motion to quash the panel. We disagree.

■ The Equal Protection clause prohibits the State from using its peremptory challenges to exclude otherwise qualified and unbiased persons from the jury solely by reason of their race. *Powers v. Ohio,* — U.S. ——, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991); *Antwine,* 743 S.W.2d at 64 (Mo.banc 1987). A prerequisite to such a claim, however, is that the motion be timely made, or it is waived. *State v. Smith,* 791 S.W.2d 744, 747–48 (Mo.App., E.D.1990). An allegation of trial court error must be brought to the court's attention at the earliest possible opportunity. *State v. Newman,* 699 S.W.2d 29, 32 (Mo. App., S.D.1985). This court, in its prior considerations of *Batson* claims, has first suggested, and then held, that the appropriate time to raise a *Batson* objection is after the State has made its strikes, but before the defendant has made his. *State v. Price,* 763 S.W.2d 286, 289 note 3 (Mo. App., E.D.1988); *State v. Lawrence,* 791 S.W.2d 729, 730 (Mo.App., E.D.1990). *Lawrence* dealt with facts and circumstances strikingly similar to those at bar, and this court held in that case that timely objections in *Batson* cases as first set forth in *Price* were mandatory. *Id.* Since then,

---

1. We note in passing that appellant used all of his peremptory challenges to remove blacks from the panel. A recent case from the Alabama court of appeals, *Lemley v. State,* 599 So.2d 64 decided January 17, 1992, holds that *Batson* applies with equal force to strikes exercised by the defendant. The United States Su-

preme Court has recently heard arguments on this issue in the case of *Georgia v. McCullom* (cert. granted 11/4/91), — U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322. The State failed to object to the strikes in this case, however, so the issue of the legitimacy of appellant's strikes is not before us.

this court has followed the *Lawrence* rule. *See State v. English*, 795 S.W.2d 610, 612 (Mo.App., E.D.1990).

■ Because appellant raised his *Batson* objection after he exercised his strikes, and those venirepersons stricken had been excused, his motion was not timely raised. In fact, appellant even agreed to the empaneled jury before raising his motion. In view of appellant's failure to raise a timely objection, we hold his *Batson* claim was waived. We shall, however, review for plain error according to Rule 30.20.

■ Plain error is a ground for reversal only where there is a strong, clear showing of manifest injustice or a miscarriage of justice. Rule 30.20; *State v. Hubbard*, 659 S.W.2d 551, 555–56 (Mo.App., W.D.1983). Plain error must be distinguished from prejudicial error. Plain error includes prejudicial error which so substantially effects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Mason*, 657 S.W.2d 40, 44 (Mo.App., E.D. 1983).

■ Pursuant to appellant's objection, the State put forth its reasons for its strikes. Appellant responded to one and only one reason offered by the State. We will review only the reason responded to, because if an attorney fails to challenge a strike as pretextual, this court must assume that no challenge was made because the defense was satisfied with the State's reason. *State v. Jackson*, 809 S.W.2d 77, 81 (Mo.App., E.D.1991). Where counsel for appellant is satisfied with the reason proffered by the State, this court is hardly in a position to find error. *Id.*

The juror in question, Donald Morgan, stated that he had felt threatened approximately fifteen years ago, when he went to pick up his daughter and was harassed by a group of young people. The State struck Mr. Morgan because he had come to the aid of another and the prosecutor felt appellant would say he came to the defense of his compatriot, thereby predisposing the juror toward appellant. Appellant implied the State's proffered reason was pretextual,

citing a similarly situated black juror, Mr. James Forland, who was not struck. Mr. Forland testified he had come to the aid of his sister on more than one occasion. In addition, Mr. Forland was older than Mr. Morgan, and the prosecutor had stated a preference for older jurors. We note that the State also struck a black venireperson, Ms. Renetta Clay, for the same reason as Mr. Morgan. Ms. Clay was situated similarly to Messrs. Morgan and Forland. Such a situation raises the possibility that the State would have liked to strike all three, but simply did not have enough peremptory challenges to do so.

■ We note that the State did provide a race-neutral explanation for its strike, a neutral explanation being a reason based on something other than the race of the venireperson. *Hernandez v. New York*, — U.S. ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). The initial step in a *Batson* inquiry is the issue of facial validity of the State's explanation. *Id.* Since the State's proffered reason was not based on the venireperson's race, the reason is acceptable. *Id.*

■ Just because a reason is acceptable does not mean it must be accepted, however. The trial court must determine if the movant has established purposeful discrimination on the part of the State. *Id.* 111 S.Ct. at 1868. The decisive question here will be whether the State's race neutral explanation for a strike should be believed. *Id.* at 1869. The best evidence will often be the demeanor of the attorney who exercises the challenge. *Id.* The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis. *Id.* at 1870. Evaluation of the prosecutor's state of mind and credibility lies particularly within a trial judge's province. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985).

■ Since the trial judge's findings in the instant context turn largely on evaluation of credibility, a reviewing court should ordinarily accord great deference to the trial judge's decision. *Hernandez*, 111 S.Ct. at 1869; *Anderson v. Bessemer City*,

470 U.S. 564, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985). Of course, even with this great degree of deference, this court is not bound by the trial court's decision; however, we are convinced that such a decision is not appropriate here. Several factors support our decision. First, and most objectively, the State faced three similarly situated venirepersons regarding the self-defense question. Two venirepersons were black and one was white. The State struck two of these venirepersons, and the one remaining was black. Doubtless, the State would have liked to strike all three. However, we do not find purposeful discrimination merely because he failed to do so. Second, the trial court found the prosecutor's explanation to be credible. No clear error is evident from the record regarding this determination. This evidence, combined with our plain error review under Rule 30.20 serves to completely topple appellant's already unstable case. Based on the instant record, we must affirm the trial court's *Batson* ruling. Point denied.

Appellant's next point on appeal concerns inclusion of a juror on the panel who moved to Illinois the weekend before trial. Appellant claims he was denied his right to a trial by his peers. We disagree.

■ If a juror is not technically qualified to serve by reason of residence or age, the verdict will not be set aside unless appellant's rights were prejudiced in some way and substantial injuries resulted. *State v. Tyler*, 587 S.W.2d 918, 924 (Mo. App., W.D.1979).

■ The trial court, upon discovering the instant situation after the verdict, examined the juror and allowed counsel for both sides to do the same. We have no record of that testimony before us. In fact, the only recorded evidence regarding this issue is the court's memo of August 17, 1990, noting that the juror had been examined by the court and both counsel. The responsibility of preparing and filing a complete record on appeal lies with appellant. *State v. Cleveland*, 627 S.W.2d 600, 601 (Mo.1982). Where a clear record is not provided, the reviewing court has nothing upon which to base its decision and, therefore, nothing to decide. *State v. Holland*, 653 S.W.2d 670, 678 (Mo.banc 1983); *State v. Hamilton*, 612 S.W.2d 141, 143–44 (Mo. App., E.D.1980). Lacking any such record here, we find a determination of appellant's claim impossible. Point denied.

Appellant's last point on appeal claims the trial court erred by overruling his motion J.N.O.V. or alternatively, by failing to grant a new trial, because the State's information and opening statement did not put him on notice that he could be convicted for acting with another. We disagree.

■ Charging a person as a principal has the same legal effect as charging him as an aider and abettor. *State v. Luckett*, 770 S.W.2d 399, 405 (Mo.App., E.D.1989). In a similar case to the one at bar, *State v. Jelks*, 672 S.W.2d 722 (Mo.App., E.D.1984), the defendant was charged as a principal, but convicted as an aider and abettor. This court held the variance between the information and the verdict director was not fatal so long as the offense submitted to the jury was not a "new and distinct offense." *Id.* at 724.

We find *Jelks* to be persuasive precedent and hold that, as the verdict director submitted to the jury alleged the same offense for which appellant was charged, no "fatal variance" occurred and appellant was sufficiently informed of the charge against him. Point denied.

Given the above reasoning, we fail to see any error in the trial court's action. Appellant's third point is denied.

The judgment of the trial court is affirmed in all respects.

REINHARD, P.J., and CRANE, J., concur.