THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FERNANDO MILLER, Defendant-Appellant.

First District (5th Division)   No. 1—89—0500

Opinion filed August 16, 1991.

James H. Reddy, Public Defender, of Chicago (Protase Tinka and Jeffery M. Howard, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Laura Dibiase, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

After a jury trial, defendant Fernando Miller was convicted of possession of a controlled substance with intent to deliver more than 15 grams of cocaine, a Class X felony, and possession of a controlled substance with intent to deliver less than 10 grams of heroin, a Class 2 felony. He was sentenced on the Class X felony to a term of 16 years in the Illinois Department of Corrections.

Defendant contends on appeal that the State failed to prove beyond a reasonable doubt that the packets recovered from defendant

contained over 15 grams of cocaine. For the following reasons we affirm.

On the evening of October 7, 1987, the tactical unit of the Chicago police department raided a second-floor apartment at 1416 East 69th Street, Chicago, Illinois. As some of the officers approached the building through the back alley, they noticed the defendant throwing clear plastic bottles out of the window. The officers used bolt cutters to gain entry into the apartment since the front and back doors were locked from the inside by burglar bars. Once inside, the officers discovered defendant and codefendant, Brian Jackson, but did not find the men to be in possession of drugs, money or the keys to the burglar bars. Defendant informed the officers that he and Jackson had been locked inside the apartment by a man named "Mike" who had offered to pay defendant and Jackson each $75 to sell drugs. Defendant told the officers that when they saw the squad cars, they became scared and threw the drugs out the window.

At trial, defendant testified that he was in the apartment to buy drugs, not to sell them, and that he had hidden the money he brought to buy drugs in his sock so that the police would not take it. He denied throwing drugs out of the window. Defendant further testified that he would steal and burglarize to get drugs, but would never sell drugs. Defendant admitted to being an addict, and that he had even used cocaine on the day of trial.

A stipulation was entered into as to the testimonies of the State's two chemists, Phillip Somerville and Fumi Moka. It was first stipulated that Somerville analyzed and weighed 2 of the 18 sealed packets of brown and white powder contained in People's exhibit number 1. It was stipulated by Somerville that "having removed the brown powder from these containers" he found that the brown powder contained in the two sealed packets weighed .08 grams and that the substance contained in the packets was heroin. It was also stipulated that Somerville tested 2 of the 18 packets of white powder in the 50/50 packs which tested negative for controlled substance.

The second stipulation concerned the chemical analysis procedures followed by chemist Fumi Moka regarding People's exhibit number 2. It was stipulated that she was qualified as an expert in the area of analysis and identification of various controlled substances, specifically the substance cocaine. Furthermore, it was stipulated that Moka weighed the contents of 65 sealed paper packets of white powder contained in People's exhibit number 2, "having removed the white powder from the containers," and found the weight of the white powder in the 65 plastic sealed paper packets to be 13.721 grams. She further

weighed the contents of eight tested bags, "having removed the white powder from the containers," and found the weight of the white powder substance contained in these eight plastic sealed packets to be 1.42 grams. It was stipulated that Moka would testify that the total weight for the white powder was 15.141 grams. Furthermore, it was Moka's expert opinion that the white powder substance in the eight packets and the additional 65 bags was a substance containing cocaine.

The jury found defendant guilty of the offense of possession with the intent to deliver 15 grams or more of cocaine and possession of a controlled substance with the intent to deliver 10 grams or less of heroin. Judgment was entered only as to the Class X felony, possession with the intent to deliver more than 15 grams of cocaine, and defendant was sentenced to 16 years in the Illinois Department of Corrections.

Defendant contends that the State failed to prove beyond a reasonable doubt defendant's possession with intent to deliver more than 15 grams of cocaine when it combined the content of the packets prior to weighing and analyzing the substances found in the packets. The crux of defendant's argument focuses on the testimony of chemist Moka. Defendant contends that chemist Moka removed the white substance from the packages and indiscriminately mingled the contents of the packages prior to weighing the substances and before determining whether each individual package contained cocaine. According to defendant this procedure raises reasonable doubt as to the true weight and amount of cocaine found in the packaged bags.

Where there is a lesser included offense for possessing a smaller amount of a controlled substance, the weight of the substance containing a drug is an essential element of a possession charge, and the weight of the substance containing the drug must therefore be proved beyond a reasonable doubt. (*People v. Hill* (1988), 169 Ill. App. 3d 901, 524 N.E.2d 604.) While the rule in Illinois is that a chemist need only test random samples in order to be qualified to render an opinion as to the makeup of the entire substance before him, this rule is not without limitation. (*People v. Kaludis* (1986), 146 Ill. App. 3d 888, 497 N.E.2d 360.) Where separate bags or containers of suspected drugs have been seized, a sample of each bag or container must be conclusively tested in order to prove that it contains a controlled substance. See *People v. Maiden* (1991), 210 Ill. App. 3d 390, 569 N.E.2d 120 (defendant's conviction was reduced where chemist conclusively identified contraband in one of three liquor bottles although tests could have easily been performed to conclusively determine whether the

substance in the other two bottles in fact contained PCP); *People v. Hill* (1988), 169 Ill. App. 3d 901, 524 N.E.2d 604 (where chemist only conclusively tested bags containing 21.93 grams of the suspect powder, State did not prove beyond a reasonable doubt that over 30 grams of the seized substance in fact contained cocaine); *People v. Ayala* (1981), 96 Ill. App. 3d 880, 422 N.E.2d 127 (conviction reduced where chemist conclusively tested the contents of only one bag of two, while rendering his opinion that both bags contained heroin); *People v. Games* (1981), 94 Ill. App. 3d 130, 418 N.E.2d 520 (conviction reduced where chemist testified that she chemically tested a portion of the contents of one bag, out of the two suspected of containing cannabis, and then stated that the "material tested" contained cannabis, but expressed no opinion as to the whole).

The issue in dispute here, however, is not whether the State failed to prove defendant guilty beyond a reasonable doubt in failing to test a sample from each individual packet, but whether the State's chemist Moka indiscriminately comingled the contents of the packages prior to weighing and testing the substances, and whether by following such procedure, the State failed to prove beyond a reasonable doubt that defendant possessed over 15 grams of cocaine. The stipulation in the present case provides:

"Fumi Moka would testify she weighed the contents of the sixty-five sealed paper packets *** having removed the white powder from the containers ***.

Fumi Moka would testify that she weighed the contents of the eight tested bags *** having removed the white powder from the containers ***."

The State maintains that nowhere in the stipulation was it said that the chemist at any time indiscriminately mixed or mingled any of the contents prior to the weighing or testing of the substances. The State contends that the defendant erroneously interprets the testimony which reads "having removed the white powder from the containers," as meaning the chemist removed and intermingled the contents prior to weighing. The State contends that a plain reading of the stipulation shows that the chemist removed the white powder from each container and then weighed and chemically analyzed the contents of each container separately.

Initially, it should be noted that defendant never raised at trial any question concerning Moka's stipulated testimony. The State and the defense stipulated to Moka's qualifications as an expert and to the weight and analysis performed by Fumi Moka. The chemist's testimony was uncontroverted, and the record does not reveal that the

defendant sought or presented an independent analysis or weighing of the questioned substances. Instructive in deciding the issue before the court is the case *People v. Williams* (1990), 200 Ill. App. 3d 503, 558 N.E.2d 261. In *Williams*, the trial court found that the entire 48.7 grams of white powdery substance were in fact cocaine, based on the stipulated testimony of an expert that he performed a series of chemical analyses and observations on the "the white powder," which was contained in 102 plastic packets, and that "all the white powder" having been weighed, weighed 48.7 grams. The question before the reviewing court was whether the State had presented sufficient evidence proving beyond a reasonable doubt that all of the white powdery substance contained cocaine and that its total weight was 30 grams or more. The court in *Williams* stated:

> "[W]e decline to subject Somerville's statement that 'the white powder' was in fact cocaine, to further scrutiny. First, we do not believe that the State reasonably would have agreed to Somerville's stipulated testimony, thereby foregoing the opportunity to place the chemist on the witness stand, where he could have described in detail the number and type of tests performed on the individual packets, were not the stipulation intended, in part, to eliminate the need for defending his testimony against a challenge to its sufficiency. Furthermore, we can only assume that defendant's trial counsel, having received notice during discovery, prior to trial, that Somerville was a potential State's witness, and having also received a copy of the laboratory report, decided to forego the opportunity to cross-examine the expert and to submit the report into evidence, in order to focus on other theories and aspects of the defense. Throughout the course of the trial, no question was raised concerning the evidence presented by Somerville or its sufficiency to support any element of the charged offenses. Nor did the defense offer any additional testimony or evidence to contradict Somerville's statements." (*Williams*, 200 Ill. App. 3d at 516-17, 558 N.E.2d at 269.)

Thus, since outside of the stipulated testimony, the weight and composition of the drugs were nowhere discussed, the *Williams* court concluded that regardless of whether the issue was waived on appeal, it was meritless in light of the record. The court therefore held that the State presented sufficient evidence for a rational trier of fact to conclude that defendant possessed a Class X amount of cocaine beyond a reasonable doubt. *Williams*, 200 Ill. App. 3d at 517, 558 N.E.2d at 270.

Likewise, in the instant case, the stipulated testimony of the State's two chemists is the only evidence of record concerning the weight and sufficiency of the substances seized. In his closing argument, defense counsel focused almost entirely on the officer's inconsistent testimony regarding the identification of defendant and his statement given at the time of arrest, as well as the evidence that the defendant was an addict in the apartment to buy drugs, not to sell them. Furthermore, as in *Williams*, the defendant's written motion for a new trial, while containing the boilerplate language that the prosecution failed to prove his guilt beyond a reasonable doubt, failed to specifically address the weight and composition of the drugs. Accordingly, we too decline to subject the statement "having removed the white powder from the containers" to further scrutiny since the parties stipulated to this testimony and, other than the stipulated testimony, never addressed the issue at trial.

Furthermore, it is difficult to ascertain whether the statement "having removed the white powder from the containers" means that the chemist weighed each package separately or combined them. Nor can we ascertain whether the chemist analyzed the contents of the packets prior to combining them. There are two cases from the third district stating that if individual packets are combined, the chemist need only take a random sample from the combined substance in order to support a finding of reasonable doubt. (*People v. Little* (1986), 140 Ill. App. 3d 682, 489 N.E.2d 322; *People v. Jackson* (1985), 134 Ill. App. 3d 785, 481 N.E.2d 1222.) We note, however, that there is some disagreement as to the propriety of this procedure. See *People v. Little* (1986), 140 Ill. App. 3d 682, 686, 489 N.E.2d 322, 325 (Heiple, J. dissenting) ("The State, after all, is required to prove its case beyond a reasonable doubt. We may speculate that each of those 11 envelopes contained cannabis. That, however, amounts to guess and conjecture which will not do. It is possible that only one of those 11 envelopes contained cannabis and we do not know the weight of any of them").

We need not, and do not, adopt the rationale of *Jackson* or the majority in *Little* to affirm the trial court in this case because where the record is unclear, we will not presume that an improper procedure was performed.

Affirmed.

LORENZ, P.J., and GORDON, J., concur.