**STATE of Missouri, Respondent,**

v.

**James GIBSON, Appellant.**

No. 62098.

Missouri Court of Appeals,
Eastern District,
Division One.

May 25, 1993.

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

James Gibson, Defendant, appeals from his convictions for trafficking in the second degree for possession of more than two grams of a substance containing cocaine base. He asserts the trial court erred in overruling his motion for acquittal, overruling his *Batson* challenge, and in giving a reasonable doubt instruction based on MAI–CR3d 302.04. We affirm.

On May 23, 1991, Officers Mark Grman and John Winter were on patrol when they noticed Defendant walking down the street. They saw him look over his shoulder in their direction and keep walking. He put his hand in his jacket and dropped an object to the ground. The officers pulled up along side of him. Winter asked Defendant to pick up the trash he dropped. Defendant denied dropping anything. The officers got out of their patrol car. Officer Grman picked up the object which was a Burger King cup and heard a rattle inside. He looked inside and saw several rock-like objects which he suspected were crack cocaine. Defendant was arrested for possession of cocaine.

In the patrol car, the officers asked Defendant to identify himself. Defendant gave them a false name. He also signed the booking sheet with a false name.

■ In his first point, Defendant asserts the trial court erred in overruling his motion for acquittal. He asserts the evidence was insufficient to establish the amount of the substance containing cocaine base exceeded two grams.

A criminalist with the St. Louis Metropolitan Police Department Crime Lab testified as to her determination of the nature and weight of the substance found in the cup. First, she did a visual examination. She stated the Burger King cup contained numerous off-white chunks which appeared to be uniform in color and texture.

She selected one of the chunks and performed a color test for cocaine. The test was positive. She performed a confirmatory test on the same chunk. That test confirmed the presence of cocaine base in the sample. None of the individual chunks weighed two grams or more, and the entire sample in the cup weighed 3.69 grams.

Section 195.223.3 states:

A person commits the crime of trafficking drugs in the second degree if, except as authorized by sections 195.005 to 195.425, he possesses or has under his control, purchases or attempts to purchase, or brings into this state more than two grams of a mixture or substance ... which contains cocaine base.

■ When Defendant saw police, he dropped the cup containing the 3.69 grams of a substance which was in the form of several rocks. All the rocks, including the one tested by the criminalist, were carried by Defendant in the same cup. He denied dropping the cup and, after being arrested, lied twice about his identity. This evidence is probative of Defendant's consciousness of guilt and of the fact that his guilt related to the contents of the cup. *See State v.*

*Sanders,* 748 S.W.2d 835, 836[2] (Mo.App. 1988).

Further, the criminalist testified cocaine base is made by mixing cocaine powder with baking soda and water and cooking it. The resulting crystalline will fall to the bottom and is cut up into smaller chunks. This evidence is probative that the rocks were all cut from one "batch" of rock cocaine, rather than from separate sources. Also, by the time the criminalist looked at the rocks, they had broken into numerous chunks, uniform in color and consistency. The criminalist stated breakage was characteristic of rocks containing cocaine.

This evidence, taken together, is sufficient evidence from which the jury could find beyond a reasonable doubt each of the original rocks in the cup which later broke into smaller chunks contained cocaine base. *See State v. Diercks,* 674 S.W.2d 72, 77[5] (Mo.App.1984). Point denied.

■ In his second point, Defendant asserts the trial court erred in overruling his *Batson* challenge because the prosecutor's proffered reasons for using all his peremptory strikes against African–Americans were pretextual. We will reverse the trial court's decision as to whether the prosecutor discriminated in the exercise of his peremptory challenges only if that decision was clearly erroneous. *State v. Griffin,* 756 S.W.2d 475, 482 (Mo. banc 1988), *cert. denied,* 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1988).

■ The trial court looks to the totality of the circumstances in evaluating the prosecutor's explanations. *State v. Parker,* 836 S.W.2d 930, 939[13] (Mo. banc 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). Once the prosecutor comes forward with neutral explanations for his strikes, any presumption of discriminatory motive is rebutted and the factual inquiry proceeds to a new level of specificity. *State v. Antwine,* 743 S.W.2d 51, 64[13] (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988) (citations omitted). The defendant then is obligated to demonstrate the explanations are merely pretextual,

and, thus, not the true reason for the use of the state's preemptory challenges. *Id.*

■ In this case, the prosecutor used all his strikes against African–American venirepersons and the Defendant is African–American. The prosecutor offered the following reasons for three of his strikes.

Venireperson Cooks had to be at work by 5:30 and had a niece on probation for shoplifting. These facts, she said would make it difficult for her to be fair to the State. Venireperson Brown had a brother who had been prosecuted by the Circuit Attorney's office for stealing a car. Venireperson Jordan had two brothers in jail for stealing and was a friend of the docket clerk for the Public Defender's office. Again, the prosecutor feared it would be difficult for Venireperson Jordan to be impartial.

Defense attorney responded to the prosecutor's explanations regarding his striking of these venirepersons. Defense attorney stated Cooks would not be held in court beyond 5:00. However, the trial judge stated Cooks could be held as late as 5:30 and stated she was due at work at 5:30. Defense attorney offered no response to the prosecutor's concern about the fact that Cooks had a niece on probation. We find the trial judge was not clearly erroneous in finding the prosecutor's explanation satisfactory and in finding defense attorney had failed to demonstrate it was merely pretextual.

Defense attorney stated that Venireperson Brown, whose brother had been prosecuted by the Circuit Attorney's office for stealing a car, had said her brother had been treated fairly. He also pointed out that Brown's brother-in-law was a police officer. Given the fact that a close relative of Brown's had been prosecuted by the Circuit Attorney's office, we do not find the trial judge was clearly erroneous in finding defense attorney failed to demonstrate the prosecutor's reasons were merely pretextual. As for Venireperson Jordan, defense attorney pointed out Jordan stated she could be fair despite that (1) two of her brothers were in jail, and (2) she was friends with the docket clerk for the Public

Defender's office. Given these relationships, the trial judge was not clearly erroneous in determining defense attorney had not shown the prosecutor's reasons for his strikes were pretextual and racially motivated.

■ Defense attorney offered no response to the prosecutor's reasons for the remaining strikes. If an attorney fails to challenge the prosecutor's explanations as pretextual, we must assume no challenge was made because the defense was satisfied with the State's reasons; thus, we are not in a position to find error. *State v. Davis*, 830 S.W.2d 469, 472[5] (Mo.App. 1992). Point denied.

■ In his third point, Defendant asserts the trial court erred in giving a reasonable doubt instruction patterned after MAI–CR3d 302.04 because that instruction suggests a higher degree of doubt than is constitutionally required for acquittal and a finding of guilt based on a degree of proof below that required by due process.

The reasonable doubt instruction has been challenged repeatedly under this same theory, and it has been upheld. *State v. Twenter*, 818 S.W.2d 628, 634[5] (Mo. banc 1991). "These cases of recent origin firmly establish that the instruction complained of does not violate constitutional standards by decreasing the state's burden of proof." *Id. Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), did not change Missouri law. Point denied.

The judgment of the trial court is affirmed.

AHRENS, P.J., and REINHARD, J., concur.