05-91-1385-CK

JUAN JESUS GABRIEL,
Appellant

NO. 0088-93, v.

THE STATE OF TEXAS,
Appellee

Petition For Discretionary
Review from the Fifth
- - - Court of Appeals

(Dallas County)

## OPINION ON APPELLANT'S
## PETITION FOR DISCRETIONARY REVIEW

Appellant was convicted of the unlawful possession with intent to deliver a controlled substance weighing 28 grams but less than 200 grams. V.T.C.A., Texas Health and Safety, Section 481.112(c). A jury assessed punishment at twenty-five years' confinement. This conviction was affirmed by the Dallas Court of Appeals in a published opinion. Gabriel v. State, 842 S.W.2d 328 (Tex.App. -- Dallas 1992). We granted discretionary review to determine whether the Court of Appeals erred in holding the evidence sufficient to show appellant possessed cocaine in an amount greater than 28 grams where only 2.237 grams in five of the fifty-four baggies containing the substance were scientifically tested. We shall affirm.

Appellant contends the evidence was insufficient to prove a quantity of cocaine in excess of 28 grams because the State was required to test enough substance to meet the alleged weight amount since the substances were packaged in different packages. Police officer Spencer testified appellant was arrested with the cocaine in a "trap house," an apartment used exclusively for selling illegal narcotics. The State seized fifty-four baggies, each containing two or three individual "rocks," from on top of a dresser. The chemist, Bunn, testified she tested five of the fifty-four baggies. She did a spot test, a gas chromatograph, and a mass spectrometry test on the contents of one baggie, did a spot



weight of 2.237 grams. The total weight of the contents of all 54 baggies was 35.2 grams. Bunn concluded the contents of the untested baggies was all cocaine.

Viewing the evidence in the light most favorable to the verdict, we hold the State met its minimum burden of proof. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); see Turner v. State, 805 S.W.2d 423, 427 (Tex.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). The State showed the random samples were the alleged controlled substance, and the total weight of the substance seized was within the range of that alleged. It was rational for the factfinder to conclude that identically packaged substances, which appear to be the same substance, are in fact the same substance. The manner of testing the substances by random sampling goes only to the weight the jury may give to the tested substances in determining the untested substance is the same as the tested substance. In addition, appellant could have conducted independent chemical tests on all fifty-four baggies to show they did not contain the same substance. Article 39.14, V.A.C.C.P.

The judgment of the Court of Appeals is affirmed.

McCormick, Presiding Judge

(Delivered March 8, 1995)
En Banc
Publish

JUAN JESUS GABRIEL, Appellant

NO. 0088-93     v.  - - - -

THE STATE OF TEXAS,
Appellee

Petition for Discretionary
Review from the Fifth
Court of Appeals
[DALLAS County]

### CONCURRING OPINION ON APPELLANT'S
### PETITION FOR DISCRETIONARY REVIEW

Would that every issue this Court exercised its discretion to review were as simple and straightforward as the plurality believes this one to be! The reality is, of course, that issues that simple are not worth this Court's time and effort, since, presumably, the various courts of appeals can be trusted to resolve them without our interference. We granted discretionary review in this cause, however, precisely because the parties raise a difficult and important issue, likely to recur, "which has not been, but should be, settled by the Court of Criminal Appeals." Tex.R.App.Pro., Rule 200(c)(2). We fail to honor our duty to the jurisprudence of the State when we treat issues momentous enough to attract our attention in the first place with such short shrift. We do a disservice to the bench and bar, and show nothing short of disrespect for the parties themselves, when we ignore the complexity of hard issues, squarely presented and well briefed, such as that raised here.

Ultimately I agree with the Court's disposition today. But I am far less certain than the plurality that a rational jury could find beyond a reasonable doubt that various substances are the same simply because they "appear to be" so, and are "identically packaged." Slip op. at 2. To say, moreover, that appellant could have tested all of the substance to prove it was not all the same smacks of unconstitutional burden shifting. Id. I write to explain why on the facts of this case I reach the same conclusion as the plurality despite these concerns.

I.

Appellant was arrested in what was described at trial as a

experience as an undercover narcotics investigator, that drugs were sold from the apartment. And indeed, a confidential informant had purchased a substance at that location that police had "verified" to be cocaine. In executing the search warrant, officers discovered the door to the apartment was barricaded with a wood block, another characteristic of a "trap house." On the top of the dresser officers found fifty-four small baggies, each containing several "rocks" of what they suspected was crack cocaine, and a loaded pistol. A field test proved positive for cocaine, although one of the officers conceded that such "spot" tests are not conclusive.

The suspected crack cocaine was forwarded to the forensic lab, where it was examined by forensic analyst Andrea Bunn. On her direct examination Bunn testified:

"Q.   Okay.   Could you briefly describe what type of analysis did you perform?

A.    There were three tests that were performed on the contents of [the fifty-four baggies], one: a color test or a spot test. It's a presumptive test used to determine what might be present in the substance. A second test is a gas chromatograph mass spectrometry test, which specifically identifies what chemical is present, and the third test, a gas chromatograph test, which helps in the quantitating, or telling how much of a chemical is present.

Q.    Ma'am, the last two tests that you mentioned, are these done with special scientific equipment?

A.    Yes.

Q.    Okay.   And what did your analysis show, ma'am?

A.    My analysis showed that there was cocaine present in the zip lock plastic bags.

*     *     *

Q.    Okay. Mrs. Bunn, could you briefly describe -- your analysis showed that it was cocaine. How much -- could you describe how much cocaine or what percentage of cocaine you found?

A.    In one of the zip lock plastic baggies that I analyzed, where three tests were performed, the three that I mentioned, the spot test, the gas chromatograph, mass

and the gas chromatograph test. On one of the bags, the
amount of cocaine found was six hundred and sixty-four
milligrams, ninety-nine percent, and the total weight of
that material was six hundred and seventy-one milligrams.
On the second bag, the amount of seven hundred and twen-
ty-five milligrams, ninety-nine percent, and the total
weight of the material was seven hundred twenty-five mil-
ligrams. On two additional bags, I did just a spot test
on the two, and that indicated to me that there was co-
caine present in comparison with the others that -- the
zip lock plastic bags that I had analyzed. The total
weight of the hard off-white material in all fifty-four
zip lock plastic bags was thirty-five point two grams.

Q. Ma'am, is thirty-five point two grams an amount
greater than twenty-eight grams but less than two hundred
grams?

A. Yes, it is.

Q. Okay. Mrs. Bunn, based on your analysis that you
conducted, your scientific analysis, your training, your
experience in doing this type of work, did you have or
did you form an opinion about the remainder of the bags
that you did not actually test? Did you form an opinion
as to what those substances were?

[Objection overruled]

A. In my opinion, from my analysis of the other five
bags, the fact that all the material in the rest of the
bags appeared to be the same, my opinion there is cocaine
present."

On cross-examination the following colloquy occurred:

"Q. What was the total amount, what was the total weight
of the substance that you identified as cocaine, that you
scientifically tested?

*    *    *

A. . . . Two point two three seven grams.

Q. Okay. So that is less than twenty-eight grams, is
that correct?

A. Correct.

Q. So the remaining thirty, approximately thirty-three
grams, you did not test, is that correct?

A. Correct.

Q. All right. So that may be cocaine, may not be co-
caine, is that correct?

A. It's possible, yes.

stance that is submitted to the institute or just to do
a portion of it?

A.   As to the deciding what to do, it's decided, ba-
sically, by funding.   Because of the cost of doing the
analysis, it's decided that we can't afford to do all of
them.

Q.   It's a money consideration?

A.   Correct.

*      *      *

Q.   Okay.  If -- the basis of your opinion as to the re-
mainder of the substance that was submitted to you is
based on the fact that you looked at it; it appeared to
be the same substance that you analyzed, is that correct?

A.   Correct.

*      *      *

Q.   Okay.   All came from the same source, so you are
assuming that the one was cocaine and the other looks
like it, so it's going to be cocaine too?

A.   Right.   I'm saying that of the fifty-four, I did
five of them, and those five was [sic] cocaine, and from
-- in my opinion, it's cocaine, the rest of it.

Q.   Right.  there is no -- other than that, there is no
scientific basis to your opinion?

A.   There is a scientific basis in the sense of statis-
tics that it is cocaine."

Back on re-direct examination, Bunn continued:

"Q.   First of all, if a Defendant, a person charged with
a crime, wants to have all the drugs fully analyzed, you
would do so at their request, is that not correct?

A.   Correct.

*      *      *

Q.   Now, ma'am, you stated earlier that, you know, your
scientific opinion, you believed the other materials, the
other ones that you did not test, to be cocaine also?

A.   Yes.

Q.   In forming that opinion, ma'am, besides just the
fact that you had tested the other five, in forming that
opinion, did you take into account the consistency of the
other -- other -- what you believed to be the other co-
caine?  Did you take into account the size, the appear-
ance, the whole package?

For all practical purposes, this was Bunn's whole testimony.

A three judge panel of the Dallas Court of Appeals held the foregoing evidence sufficient to prove beyond a reasonable doubt that appellant possessed cocaine in an aggravated amount, that is, an amount more than 28 but less than 200 grams.  V.T.C.A. Health & Safety Code §481.112(c) and (d)(1).  See Gabriel v. State, 842 S.W.2d 328, at 332-33 (Tex.App. - Dallas, 1992).  Justice Kaplan dissented.  Id., at 333-35.  Apparently finding no Texas precedents, both the majority and the dissenter below cite cases from Illinois and Florida.  The gist of the disagreement seems to be what significance to give to the fact that the substance in the present case was found in fifty-four separate receptacles.  The majority held, in effect, that because the substance was apparently homogeneous, the State could establish that a random sample was cocaine, and that by extrapolation from that sample, the jury could find beyond a reasonable doubt that the whole was what the sample proved to be.  Justice Kaplan disagreed, believing that the better reasoned caselaw from those jurisdictions that have addressed the question allow extrapolation from random sampling only where a homogeneous substance is found in a single receptacle.

In his petition for discretionary review, appellant argues that similarity in appearance and texture are not enough to justify jury extrapolation from a sample to the whole with the requisite degree of confidence, viz: beyond a reasonable doubt.  We granted his petition to address this question.  Rule 200(c)(2), supra.  We should at least examine the cases from other jurisdictions that the court of appeals invoked, as well as other cases recently decided that the parties call to our attention.

II.

ered to officer at same time; twelve field-test positive for LSD, and are shown to be homogeneous; then six more prove conclusively to be LSD; held admissible to show all 89 tablets are LSD); People v. Yosell, 53 Ill.App.3d 289, 11 Ill.Dec. 184, 368 N.E.2d 735 (1977) (evidence sufficient to prove requisite amount, where one tablet from each of ten baggies found in single paper bag tested conclusively for barbituric acid); People v. Kaludis, 146 Ill.App.3d 888, 100 Ill.Dec. 382, 497 N.E.2d 360 (1986) (conclusive test on random sample of pills found in single bag sufficient to prove requisite amount of methaqualone, where pills were all same size, shape, color and density, and each marked "Lemmon 714").

Where suspected contraband is found in separate receptacles, however, courts have generally required that at least a sample from each receptacle be tested before a jury can say with a level of confidence beyond a reasonable doubt that all of the substance, or at least enough of it to establish the jurisdictional amount, contains that alleged contraband. See People v. Yosell, supra; People v. Games, 94 Ill.App.3d 130, 49 Ill.Dec. 666, 418 N.E.2d 520 (1981) (chemist's testimony that one of two bags proved to be cannabis, and that both bags together weighed requisite amount, not sufficient to establish requisite amount was cannabis); People v. Ayala, 96 Ill.App.3d 880, 52 Ill.Dec. 446, 422 N.E.2d 127 (1981) (conclusive test of sample of substance taken from only one of two bags, both of which had field-tested positive for heroin, presents inference sufficient to establish proof by a preponderance of evidence that both bags contained heroin; but inference insufficient as a matter of law to constitute proof beyond a reasonable doubt); People v. Hill, 169 Ill.App.3d 901, 120 Ill.Dec. 574, 524 N.E.2d 604, at 611 (1988) ("Where separate bags or containers of suspected drugs are seized, a sample from each bag or container must be con-

bag test conclusively for powder cocaine; even though contents of all 92 packets look alike, evidence held insufficient to establish requisite amount); Campbell v. State, 563 So.2d 202 (Fla.App. 3 Dist. 1990) (requisite amount to show delivery offense not established "where chemist only tested one or two heroin capsules found in a change purse."); People v. Maiden, 210 Ill.App.3d 390, 155 Ill.Dec. 120, 569 N.E.2d 120 (1991) (evidence insufficient to prove requisite amount where all three bottles of suspected PCP field-test positive, but only one subjected to test that conclusively establishes PCP); People v. Young, 220 Ill.App.3d 488, 163 Ill.Dec. 290, 581 N.E.2d 241 (1991) (even though three baggies and numerous paper packets all found in one paper bag, evidence insufficient to show requisite amount where only one baggie and one packet tested and shown to be powder cocaine); but see State v. Riley, 587 So.2d 130 (La.App. 2 Cir. 1991) (testing of only six of 33 baggies of white powder substance all found in trash can enough to show all 33 are cocaine).

Nevertheless, the courts that have addressed the specific question have held that only a random sample of crack cocaine need be tested to establish the requisite amount, whether found in one receptacle or in individual packets. Bond v. State, 538 So.2d 499 (Fla.App. 3 Dist. 1989) (testing of only one of 139 small baggies sufficient to show all are "rock" cocaine, because, unlike powder cocaine, which resembles many other substances, "rock" cocaine is homogeneous, like similar-looking pills); State v. Meeks, 552 N.E.2d 328 (Fla. App. 3 Dist. 1989) (same as Bond); State v. Ballom, 562 So.2d 1073 (La.App. 4 Cir. 1990) (testing of four of 1095 baggies of "rocks" of suspected cocaine all found in single paper bag sufficient to show all are cocaine, since "[t]here is no

all thirty-one rocks contained cocaine."); State v. Gipson, 856
S.W.2d 78 (Mo.App. E.D. 1993) (only one of numerous "rocks" found
in cup tested and found to contain a cocaine base; but in view of
testimony from a "criminalist" that individual "rocks" of crack co-
caine are usually all cut from one "batch," evidence held suffici-
ent to show all "rocks" are cocaine).

It appears from these cases that by and large it is sufficient
to extrapolate from a random sample of an apparently homogeneous
substance found in a single receptacle that the whole of the sub-
stance is the same.  In the case of contraband pills, as long as
they share size, weight, shape and scoring characteristics, they
may all be assumed to be the same as a random sample, whether found
in the same receptacle or in different receptacles recovered from
the same general location.  Under these circumstances it is gener-
ally found that the strength of the inference that the whole of the
substance, or a requisite part, is the same as the sample is suffi-
cient to support a jury conclusion to a level of confidence beyond
a reasonable doubt.  And as long as the strength of the inference
supports a jury conclusion beyond a reasonable doubt, the State has
met its burden of production of evidence sufficient to support the
verdict.  More evidence would advance the State's burden of persua-
sion, of course.  But that is proverbial gravy; the State has al-
ready made out its prima facie case, producing sufficient evidence
to convince some jury beyond a reasonable doubt.  See Rogers v.
State, 774 S.W.2d 247, at 256 (Tex.Cr.App. 1989).  In the premises
it does not unconstitutionally shift the State's burden of proof to
suggest, as some of the cases do, that the defendant could have
tested the whole of the substance himself in order to meet and de-
feat the State's burden of persuasion, if he thinks such testing

pear to be the same, if other substances resemble the sampled sub-
stance. Because any of a number of substances look like powdered
cocaine or heroin, the inference that the whole, or a requisite
amount, is the same as a sample taken from fewer than all of the
receptacles, or at least enough receptacles to show the requisite
amount, is not compelling enough to justify a jury finding to a
level of confidence beyond a reasonable doubt. Under these circum-
stances, in order to satisfy its initial burden of production, the
State must conclusively test at least a sample of a sufficient num-
ber of the receptacles to prove up the requisite amount of contra-
band. In these premises, it is not surprising that many courts
have observed that when the State has at its disposal a test that
can conclusively prove that a requisite amount of a substance was
contraband, but does not avail itself of that test, it has not made
out a prima facie case. E.g., People v. Ayala, supra; People v.
Maiden, supra.[*]

The question might be framed, then, as follows: Does "rock"
cocaine have a sufficiently distinctive texture and appearance that
a sample from one receptacle that tests conclusive for cocaine will
justify the inference, beyond a reasonable doubt, that substances
of like texture and appearance found in other receptacles in close
proximity to the first are also cocaine. In Bond v. State, supra,
the Florida court opined that rock cocaine "more closely resembles
pills than powder." It therefore concluded that testing the con-

---

[*]     This observation puts me in mind of the former rule, now de-
funct, that in a weak circumstantial evidence case, where the rec-
ord shows there was other evidence available to the State which
would have shed additional light on the facts, and the State neith-
er adduced that evidence, nor satisfactorily accounted for its
failure to do so, an appellate court will find there is a reason-
able doubt as a matter of law. E.g., Cruz v. State, 482 S.W.2d 264

tents of one of 139 baggies of suspected rock cocaine was suffi-cient to support the inference that all was cocaine beyond a rea-sonable doubt.  This seems an unacceptably superficial analysis.
In State v. Ballom, supra, a Louisiana court observed that no evi-dence showed that the 1095 baggies of rock cocaine "were not fun-gible."  This analysis begs the question.  Without first deciding whether a sample of some of the baggies of what appeared to be rock cocaine was sufficient to meet the State's burden to produce evi-dence that all of the baggies contained cocaine, the observation that no evidence proved the contents of the baggies were not fungi-ble only serves to shift the burden of proof.  The Missouri case of State v. Gipson, supra, is more persuasive.  In Gipson:

> "the criminalist testified cocaine base is made by mixing cocaine powder with baking soda and water and cooking it. The resulting crystalline will fall to the bottom and is cut up into smaller chunks.  This evidence is probative that the rocks were all cut from one 'batch' of rock co-caine, rather than separate sources.  Also, by the time the criminalist looked at the rocks, they had broken into numerous chunks, uniform in color and consistency.  The criminalist stated breakage was characteristic of rocks containing cocaine."

856 S.W.2d at 80.  We have no like testimony in the instant case, nor any other evidence to show that rock cocaine has distinctive characteristics not commonly shared by other substances.  It is therefore more difficult to conclude that a sample taken from one baggie that positively proves to be cocaine will support the infer-ence that all fifty-four baggies contain cocaine to the level of confidence beyond a reasonable doubt.

Nevertheless, on the facts of this case I cannot conclude that the court of appeals erred to hold the State met its burden to pro-duce evidence sufficient to justify the inference beyond a reason-able doubt that at least 28 grams of the substance contained in the fifty-four baggies was cocaine.  The evidence does show that the

"crack house." Three of the fifty-four baggies proved conclusively to contain cocaine. The police conducted a "spot" test on another baggie, and the analyst, two more, which all showed positive for cocaine. Given these circumstances, the jury could infer that all the similarly situated baggies contained the same substance, and that that substance was cocaine. Moreover, the strength of that inference, while less than overwhelming, was at least sufficient that I would not overturn the court of appeals majority's conclusion that a rational jury could accept it as true beyond a reasonable doubt. Arcila v. State, 834 S.W.2d 357 (Tex.Cr.App. 1992). I therefore agree that the court of appeals' judgment should be affirmed.

## III.

So long as the State has satisfied its burden of production, we may legitimately expect the accused to produce evidence, if any, to counter that prima facie case. Bunn testified that a lack of "funding" limited her ability to test a sample from all fifty-four baggies in this cause. She added, however, that at a defendant's request, she would analyze "all the drugs." It is doubtful that due process requires the State to actually generate potentially exculpatory evidence. See San Miguel v. State, 864 S.W.2d 493 (Tex. Cr.App. 1993). Due process does require, however, that indigent defendants be provided the resources to investigate the existence of such evidence. See De Freece v. State, 848 S.W.2d 150 (Tex.Cr. App. 1993); McBride v. State, 838 S.W.2d 248 (Tex.Cr.App. 1992); Article 26.05(a), V.A.C.C.P..

The plurality today observes that "appellant could have conducted independent chemical tests on all fifty-four baggies to show they did not contain the same substance." Slip op. at 2. Because

right to access to whatever resources he needed to investigate and counter, if possible, the State's prima facie case. Nevertheless, the plurality's naked observation is misleading, and could lead to improper burden-shifting in the general run of cases. See e.g., State v. Ballom, supra. This kind of language should be eschewed.

Because the plurality neglects its responsibility as a discretionary review court to explain and illuminate, I join the judgment of the Court, but not the plurality opinion.

CLINTON, Judge

(Delivered: March 8, 1995)
EN BANC
PUBLISH

Mansfield, J., joins this opinion.

Maloney, J., joins Parts I and II of this opinion and otherwise joins the judgment of the Court.

JUAN JESUS GABRIEL, Appellant

NO. 0088-93    v.

THE STATE OF TEXAS, Appellee

Petition for Discretionary
Review from the Fifth
Court of Appeals

[DALLAS County]

## DISSENTING OPINION ON APPELLANT'S
## PETITION FOR DISCRETIONARY REVIEW

Today, we are presented with the following question of first impression: In cases alleging an aggravated offense of possession of a controlled substance where the alleged controlled substance is separately packaged, must the State scientifically analyze a sufficient number of the packages to establish the aggravated amount?[1] Believing the question should be answered in the affirmative, I respectfully dissent.

### I.

Following a raid on an alleged "trap house," Dallas police officers seized 54 plastic baggies, each containing two or three individual "rocks" of a substance suspected to be cocaine. A field "spot test" conducted on a portion of the contents suggested the substance was cocaine.[2] The baggies were then submitted to a State forensic drug chemist who testified that the total weight of the contents of the 54 baggies was 35.2 grams. The chemist scientifically tested the contents of three of the 54 baggies. On the contents of one baggie the chemist conducted a spot test, a gas chromatograph test, and a mass spectrometry test which revealed cocaine, ninety-nine percent pure. On the contents of the two other baggies, the chemist conducted a spot test and a gas chromatograph test which revealed cocaine, in both baggies, ninety-

---

[1]    With a glib nonchalance ill suited to the importance of the issue presented, the plurality avoids discussing this question. Nor does the plurality discuss how either our courts of appeals or the courts of foreign jurisdictions have answered this question. The bench and bar and the people of this State deserve more from a court of last resort. Such an exceedingly poor attempt to address this pressing issue serves only to undermine this Court's future efforts to resolve important issues.

nine percent pure.[3] The cocaine scientifically tested weighed less than 28 grams. From her visual observation of the similar texture and coloring of the contents in the other baggies, as well as the similar packaging, the chemist speculated that the untested baggies also contained cocaine. However, she admitted it was possible the untested baggies did not contain cocaine because their contents were not scientifically analyzed. Appellant was convicted of possession with the intent to deliver a controlled substance weighing at least 28 but less than 200 grams.[4] Tex. Health & Safety Code Ann. § 481.112(c).

It is true that in reviewing the sufficiency of the evidence, we must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2788-2789 (1979); Langston v. State, 855 S.W.2d 718, 721 (Tex.Cr.App. 1993); and, Reeves v. State, 806 S.W.2d 540, 543 (Tex.Cr.App. 1990). When faced with a challenge to the sufficiency of the evidence, we must insure that the State "has proven beyond a reasonable doubt each and every element of the alleged crime and not just [provided] a plausible explanation for the crime."[5] Butler v. State, 769 S.W.2d 234, 237 (Tex.Cr.App. 1989), overruled on other grounds; Geesa v. State, 820 S.W.2d 154, 161 (Tex.Cr.App. 1991); Wright v. State, 603 S.W.2d 838, 840 (Tex.Cr.App. 1980); and, Tex. Penal Code Ann. § 2.01. See also, In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072 (1970). Just as our role is not

---

[3] The chemist conducted a spot test on two of the remaining baggies. Although the results of that test suggested the presence of cocaine, a spot test is not conclusive. See, n. 2, supra.

[4] The indictment alleged, in pertinent part, that appellant possessed:

to become the "thirteenth juror," reweighing the evidence and substituting our own opinion for that of the jury, Wilson v. State, 863 S.W.2d 59, 65 (Tex.Cr.App. 1993), so to, we must not allow our deference to the verdict to relieve the State of its burden of proving every element of the crime.   To do so would render us a rubber stamp and abrogate our Constitutionally mandated responsibilities.

## II.

### A.

In Thorpe v. State, 831 S.W.2d 548 (Tex.App.--Austin 1992, no pet.), the Austin Court of Appeals addressed an issue similar to the issue presented in the instant case.   Thorpe was convicted of aggravated possession of cocaine and, on appeal, contended the evidence was insufficient to prove he possessed at least 28 grams of cocaine, including adulterants and dilutants.   Id., 831 S.W.2d at 549.   The Court of Appeals recited the facts as follows:

> At trial the State introduced into evidence four exhibits that police officers had seized at appellant's apartment and that the State's chemist had tested for the presence of controlled substances.   Two of the tested exhibits, numbers 6 and 7, contained no controlled substances; however, the other two exhibits, numbers 4 and 5 tested positively for cocaine.
>
> Exhibit number 4 included 101 small zip-locked bags, each of which contained a solid granular substance.   The State's chemist tested 10 of these 101 small bags and found that the substance in each of the 10 small bags contained cocaine.   The combined weight of all 101 small bags was 16.93 grams; however, there was no evidence as to the weight of the 10 small bags that the State's chemist tested.   Exhibit number 5 consisted of a single bag containing two large chunks of solid material.   The State's chemist determined that these chunks contained cocaine.   The weight of exhibit number 5 was 27.00 grams; therefore, the aggregate weight of both exhibits 4 and 5 was 43.93 grams.

Ibid.

The State also presented testimony by the chemist who tested the baggies.   While the chemist assumed the total weight of the

Relying upon our decisions in Cawthon v. State, 849 S.W.2d 346, 348-349 (Tex.Cr.App. 1992); and Reeves v. State, 806 S.W.2d 540,[6] the Court held the evidence was insufficient to prove aggravated possession:

> Obviously, the State presented sufficient evidence of the identity of the named illegal substance; exhibits 4 and 5 contained at least some cocaine. However, there is no evidence that the remainder of the substance was adulterants and dilutants. The State's chemist testified only that exhibits 4 and 5 could include adulterants. Under the teaching of Reeves and Cawthon, this is not sufficient "Absent facts to show that the remainder of the material consisted of substances intended to increase the bulk or quantity of the final product, [crack cocaine], it cannot be said that the remainder was an adulterant or dilutant." Reeves, 806 S.W.2d at 544 (emphasis added). Even if we assume, therefore, that the State's evidence was sufficient to establish that exhibits 4 and 5 "contained" cocaine and adulterants and dilutants, there was absolutely no evidence that was all the exhibits contained. Thus, no rational juror could determine beyond a reasonable doubt that of the 43.93 grams of substance seized in appellant's apartment, at least 28 grams was cocaine plus adulterants and dilutants; based on the evidence presented, it could have been more or it could have been less.

> \*       \*       \*

> Our conclusion also finds support in the Court of Criminal Appeals' analysis in Reeves and Cawthon. In Reeves the State's expert testified that the entire contents of a bag containing amphetamine weighed 29.76 grams. However, he also stated that he did not determine the weight of the amphetamine in the bag or the nature or weight of the other substances in the tab. The Court of Criminal Appeals held that the evidence was insufficient to prove delivery of more than 28 grams of amphetamine. Reeves, 806 S.W.2d at 543-45. In the present case, the State's expert testified that the entire contents of two exhibits containing cocaine weighed 43.93 grams. However, there was no testimony as to the weight of the cocaine in the exhibits, nor was there testimony as to the identity or weight of the other substances in the exhibits.

Thorpe, 831 S.W.2d at 551 (emphasis in original).

_____

[6]     In Cawthon, 849 S.W.2d at 348-349, and, Reeves, 806 S.W.2d at 542-543, we held that for aggravated drug cases where the State contends the weight of the controlled substances includes adulterants or dilutants, the State must prove not only the existence of an illegal substance but also that the remaining

## B.

The Court of Appeals' reasoning in Thorpe is applicable to the instant case. Thorpe essentially holds that in cases alleging an aggravated offense of possession of a controlled substance, the State must conclusively prove through scientific testing that the alleged controlled substance, along with its adulterants and dilutants, exist in an amount sufficient to raise the offense to an aggravated level. Id., 831 S.W.2d at 548. The holding in Thorpe is sound and should be adopted by this Court.

In the instant case, the scientific testing conclusively proved the presence of cocaine. However, the amount tested was less than 28 grams. Therefore, absent conclusive proof through scientific testing that the untested baggies contain a sufficient amount of cocaine to elevate the weight to at least 28 grams, the State has failed to prove an element of the offense.

## IV.

In his concurring opinion, Judge Clinton relies on foreign jurisdictions to arrive at the same holding as in Thorpe, i.e., where separate packages or containers of suspected drugs have been seized, a sample of each bag or container must be conclusively tested in order to prove that it contains a controlled substance. Concurring op., pp. 8-9. See also, People v. Young, 581 N.E.2d 241, 247 (Ill.App. 1st Dist. 1991); People v. Miller, 578 N.E.2d 1065, 1067 (Ill.App. 1st Dist. 1991); People v. Maiden, 569 N.E.2d 120, 125-127 (Ill.App. 1st Dist. 1991); Campbell v. State, 563 So.2d 202, 202 (Fla.App. 3rd Dist. 1990); and, Ross v. State, 528 So.2d 1237, 1241 (Fla.App. 3rd Dist. 1988). Thus, Judge Clinton correctly concludes the random sampling of the contents of the baggies was clearly insufficient to identify the substances in all of the baggies. Concurring op., pp. 8-10.

the circumstances of the seizure, the similar texture and color of the substances, the similar packaging of the contents of the baggies, and the fact that the contents of some of the baggies tested positive for cocaine, permits the inference that the remaining untested baggies also contain cocaine.[7] Concurring op., pp. 10-11. This reasoning is deeply flawed; if one can not infer that the untested baggies contain cocaine from the baggies that do contain cocaine, then why may one infer that the untested baggies contain cocaine from the fact that they were found in a crack house?

Although the circumstantial evidence noted by Judge Clinton is highly probative of appellant's intent to possess the alleged controlled substance, see, Branch v. State, 599 S.W.2d 324, 325-326 (Tex.Cr.App. 1979), I do not believe that evidence concurrently proves the identity of the substances because such evidence is qualitatively distinct. Consider an example: a defendant who possesses a substance knowing it to be cocaine is guilty of possession of a controlled substance. Martin v. State, 753 S.W.2d 384, 387 (Tex.Cr.App. 1988). By contrast, a defendant who possesses a substance, believing it to be cocaine, but which is actually baking soda, is not guilty of possession of a controlled substance, even if he behaves in a manner consistent with one who actually possess cocaine. In both situations, the defendant's

---

[7]    The reliability of circumstantial evidence, rather than scientific testing, to prove the identity of an alleged controlled substance is undermined by the Legislature's recognition that it is not uncommon for a substance to be offered as a controlled substance, appear to be a controlled substance, but in reality, be an innocuous substance. To address such a situation, the Legislature enacted Tex. Health & Safety Code Ann. § 482.002(a), which prohibits the delivery of a "simulated controlled substance."

intent is evident from circumstantial evidence.[8] However, the defendant's criminal liability is entirely contingent on the identity of the substance.

As we noted in Stewart v. State, 718 S.W.2d 286, 289 (Tex. Cr.App. 1986), the identity of a controlled substance is generally determined through chemical analysis. See e.g., Garcia v. State, 473 S.W.2d 488, 490 (Tex.Cr.App. 1971); and, Aguero v. State, 298 S.W.2d 822, 824 (Tex.Cr.App. 1957). Similarly, Thorpe and the cases from foreign jurisdictions make clear that without scientific testing we cannot be certain that the contents of separate packages or containers are identical. Consequently, circumstantial evidence may not be relied upon to prove the identity of the alleged controlled substance.

## V.

In light of the foregoing, I would hold that when the alleged controlled substance is separately packaged, the State must scientifically analyze a sufficient number of the packages to establish the aggravated amount. Without such a holding the State is relieved of its burden of proving each element of the offense.

With these comments, I respectfully dissent.


                                        BAIRD, Judge


Overstreet, J., joins this opinion.

(Delivered March 8, 1995)

En Banc

Publish

_____

[8]     Undoubtedly, a defendant who intends to sell an innocuous