# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00108-CR

**Willie Lloyd, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT NO. A-99-0500-S, HONORABLE THOMAS GOSSETT, JUDGE PRESIDING

Willie Lloyd, Jr. ("Lloyd") seeks reversal of the district court's judgment, finding him guilty of possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d) (West Supp. 2000). Lloyd raises four issues on appeal: (1) the factual and legal sufficiency of the evidence, (2) the court's refusal to require codefendant Hardin to testify before the jury, (3) the court's denial of his request for a new attorney, and (4) ineffective assistance of counsel. Finding no reversible error on these issues, we will affirm the judgment of the district court.

## Facts

On May 2, 1999, officers of the Rio Concho Drug Task Force arrested Willie Lloyd, Jr. and his girlfriend, Sara Hardin ("Hardin"), as they drove away from a park known for

drug trafficking. Officers then searched a motel room registered in the name of Hardin pursuant to a warrant.

The room search revealed a Sentry lock box containing 198.5 grams of crack cocaine in seven separate bags. Most of the cocaine was in lump form, but some had been cut into individual rocks for resale. The same box contained three large rings, one with the name "Jim" inscribed on it. Testimony at trial revealed that Lloyd's street-name or nickname was "Jim Dandy." The box also contained a letter to "Willie," who was referred to later in the body of the letter as "Jim." Elsewhere in the room, police found clothing consistent with Lloyd's size (including men's boxer shorts), personal mail, documents, and medication, all clearly marked as belonging to Lloyd. Police also uncovered a plate with a razor blade, paraphernalia commonly used for cutting larger chunks of cocaine into rocks that are then sold on the street for $20 each. In addition, police later recovered motel guest records indicating that Lloyd's mother came to pick up the contents of the room after its occupants were arrested.

In searching the vehicle, police found a rental agreement showing that the car was leased to Lloyd, with Hardin listed as an additional driver. In the vehicle's trunk, they discovered a second lock box containing a drug ledger, a GTE calling card with Lloyd's name on it, several pieces of men's jewelry, and $3,700 in cash. The keys to both lock boxes were found together with the keys to Lloyd's leased vehicle. In addition, police found $275 in cash on Lloyd's person.

Lloyd was indicted for possession of between four grams and two-hundred grams of a controlled substance with intent to deliver. On January 20, 2000, a jury convicted Lloyd of

2

this charge. The judge sentenced Lloyd to fifty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Lloyd appeals the trial court's judgment.

## Discussion

Lloyd seeks review of (1) the factual and legal sufficiency of the evidence, (2) the court's refusal to require codefendant Hardin to testify before the jury, (3) the court's denial of his request for a new attorney, and (4) his claim of ineffective assistance of counsel.

First, Lloyd contends that the evidence was factually and legally insufficient to support his conviction. In determining the legal sufficiency of the evidence to support a criminal conviction, we consider whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)*; Geesa v. State*, 820 S.W.2d 154, 157 (Tex. Crim. App. 1991); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). In contrast, when conducting a factual sufficiency review, we consider "all the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses." *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.–Austin 1992, no pet.). We will set aside a verdict for factual insufficiency "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.–Austin 1992, pet. ref'd untimely filed).

In order to prove the unlawful possession of a controlled substance, the State must show that (1) the accused exercised care, control, and management over the contraband, and (2) the accused knew that what he possessed was contraband. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981). When the accused is not in exclusive possession of the place where the controlled substances are found, additional facts and circumstances must be present that affirmatively link the accused to the contraband. *Id.* In making a determination of whether sufficient affirmative links exist, each case must be reviewed on its own facts. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

The record shows that 198.5 grams of crack cocaine were found in a lock box in a motel room registered to Lloyd's girlfriend. Some of the cocaine had been cut into individual rocks that are typically used for resale. There is also evidence showing that Lloyd was staying in the motel room, including prescription medicine, personal mail in his name, and clothing. In addition, the motel's business records indicate that after Lloyd's arrest, his mother attempted to pick up the room's contents.

Evidence that Lloyd had access to the cocaine in the lock box includes the fact that the key to the box was found in his possession on the same chain as the keys to the vehicle he was driving at the time of his arrest. In addition, jewelry and a letter belonging to Lloyd were found in the same lock box as the cocaine.

The second lock box, which was found in Lloyd's vehicle, offers further support for the finding that Lloyd knew he possessed a controlled substance and had an intent to deliver. The key to this box was on the same chain as the keys to the vehicle and the first lock box. The

4

second box contained a drug ledger, a calling card with Lloyd's name on it, several pieces of men's jewelry, and $3,700 in cash. The police also found $275 on Lloyd's person.[1] Lloyd had no known, legitimate employment at the time of his arrest.

Taken as a whole, we conclude that these facts and circumstances are sufficient to create an affirmative link between Lloyd and the cocaine found in the motel room. *See Deshong*, 625 S.W.2d at 329. On this basis, a rational jury could have found that Lloyd exercised care, control, and management over the drug, and that he knew the cocaine was contraband. *See id.*

Lloyd also contends that the State did not sufficiently prove that the cocaine in his possession weighed between four grams and two-hundred grams. Specifically, he claims that the laboratory testing process was flawed because after taking representative samples from each of the bags found in the lock box, the contents of the bags were combined before weighing. The record shows that J.R. Burch of the Texas Department of Public Safety Crime Laboratory followed an approved procedure whereby he visually inspected the submitted substances and observed them to be similar material. He then analyzed a portion from each of the submitted bags of suspected cocaine to make sure they were all the same substance. Once these tests were done, the entire contents were combined for the remainder of the testing, resulting in a total weight of 198.5 grams.

In *Gabriel v. State*, the court found that when only five of fifty-four bags of crack cocaine had been scientifically tested and found to be ninety-nine percent cocaine, and the

---

[1] These sums were primarily in $20 denominations. The average price of a rock of cocaine in San Angelo is $20. The approximate street value of the 198.5 grams found in the first lock box is $39,000.

remaining bags had been judged identical on visual inspection, "[i]t was rational for the fact finder to conclude that identically packaged substances, which appear to be the same substance, are in fact the same substance." *Gabriel v. State,* 900 S.W.2d 721, 722 (Tex. Crim. App. 1995). *Gabriel* further held that "[t]he manner of testing the substances by random sampling goes only to the weight the jury may give to the tested substances in determining the untested substance is the same as the tested substance." *Id.* Accordingly, the jury in this case was free to accept the evidence given by the chemist and find that Lloyd possessed between four grams and two-hundred grams of cocaine. *See id.* This is especially true given that the weight determined by the laboratory was 198.5 grams, near the maximum of the possession category with which Lloyd was charged.

When viewed in the light most favorable to the prosecution, we find that this evidence is legally sufficient to support the jury's finding that Lloyd possessed between four grams and two-hundred grams of cocaine, that he had knowledge of the controlled substance in his possession, and that he intended to deliver it. *See Jackson*, 443 U.S. at 318-19; *Geesa,* 820 S.W.2d at 157. Viewing all of the evidence, we do not conclude that the jury's finding is so contrary to the overwhelming weight of the evidence as to be wrong or unjust. *See Clewis,* 922 S.W.2d at 129. We overrule Lloyd's legal and factual challenges to the sufficiency of the evidence.

Lloyd's next issue concerns the refusal of the court to require the testimony of codefendant Hardin before the jury. The record shows that Lloyd called Hardin to testify in a hearing outside the jury's presence. During this hearing, Hardin invoked her Fifth Amendment

rights. At the conclusion of the hearing, the court, *defense counsel*, and the State agreed that Hardin should not invoke her constitutional right to refuse to testify in front of the jury. We find that the case law on this issue does not support Lloyd's contention of error. "[T]his court has repeatedly held that a defendant has no right to have a witness assert or invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury." *Ellis v. State*, 683 S.W.2d 379, 382 (Tex. Crim. App. 1984) (citations omitted); *see Mendoza v. State*, 552 S.W.2d 444, 450 (Tex. Crim. App. 1977); *Rodriguez v. State*, 513 S.W.2d 594, 596 (Tex. Crim. App. 1974) (finding that when witness takes Fifth Amendment, refusal to testify alone cannot be basis of any inference by jury). Accordingly, we overrule Lloyd's second issue.

The final two issues raised by Lloyd involve the adequacy of counsel. Lloyd contends that the trial court's denial of his request for a new attorney constituted a denial of his right to counsel. Additionally, he argues that the failure of his counsel to object to the insufficiency of the evidence and to the court's refusal to require the testimony of Hardin before the jury amounted to ineffective assistance of counsel.

A defendant has the constitutional right to either retain counsel or have an attorney appointed by the court. *See* Tex. Const. art. I, § 10. In this case, Lloyd chose to retain counsel. The record shows that Lloyd voiced his displeasure with his retained counsel at a pretrial hearing held January 4, 2000, two weeks before the start of trial. As reason for his complaint, Lloyd cited both a general lack of attorney-client communication and the refusal of his counsel to file certain motions. Upon further questioning, Lloyd revealed that he wanted his counsel to file a motion to drop the intent to deliver charge. The trial court responded that the State would be unlikely to

7

agree to such a request and that such a motion would be ill-advised. The court also informed Lloyd that he had a good attorney and to think seriously before making a change. Lloyd did not speak further on the issue and did not revisit the matter at subsequent hearings or at trial. Because the record shows that Lloyd was represented by counsel both before and at trial, we do not find that Lloyd has preserved an issue regarding his right to counsel for us to review.

In order to show ineffective assistance of counsel, defendant must satisfy a two-pronged test. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on to have produced a just result. *Welborn*, 785 S.W.2d at 393 (citations omitted). The applicable test requires showing that (1) defense counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* The prejudice prong requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* In this case, Lloyd bases his claim of deficiency on his counsel's failure to object to the sufficiency of the evidence and to the court's refusal to require Hardin's testimony. However, we conclude that the trial court and case law supported defense counsel's position on both issues. As noted above, the court correctly admitted the evidence of the weight of the drug in Lloyd's possession and refused to require codefendant Hardin to invoke her Fifth Amendment right in front of the jury. *See Gabriel*, 900 S.W.2d at 722; *Ellis*, 683 S.W.2d at 382. These are the only grounds on which Lloyd bases his contention

8

of ineffective assistance of counsel. Neither issue contains a point of error which is reversible on appeal. *See Gabriel*, 900 S.W.2d at 722; *Ellis*, 683 S.W.2d at 382. Therefore, Lloyd cannot satisfy the first prong of the requisite test by showing that defense counsel's performance was deficient. *See Welborn*, 785 S.W.2d at 393. Accordingly, we hold that the record does not support a claim of ineffective assistance of counsel.

### Conclusion

Having determined that the evidence supports the trial court's verdict, we affirm the conviction of Willie Lloyd, Jr. for possession of a controlled substance with intent to deliver.

_____

Mack Kidd, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: November 2, 2000

Do Not Publish

9